In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3516

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVEN PEREZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 90—**Ruben Castillo**, *Judge.*

ARGUED JANUARY 19, 2012—DECIDED MARCH 12, 2012

Before KANNE, SYKES, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Steven Perez, along with a number of fellow gang members, was indicted for racketeering conspiracy. He originally stood trial with seven other co-defendants; the jury found each of the co-defendants guilty, but was unable to reach a verdict for Perez. The district court declared a mistrial as to Perez, and he was subsequently retried. When the case was given to the jury for deliberation, the government submitted a

redacted indictment removing allegations against Perez's former co-defendants, who were no longer on trial. Perez now argues that redacting the indictment to remove these extraneous allegations violates the Grand Jury Clause of the Fifth Amendment. Because we find that the trial court did not commit plain error, we affirm Perez's conviction.

## I. BACKGROUND

Perez was involved in three attempted murders as a member of the Insane Deuces, a violent street gang located primarily in Northern Illinois.[1] The first two attempted murders occurred on January 20, 2002, when brothers Gerardo and Rodolpho Rios were mistaken for members of a rival street gang and shot while walking along the street. Gerardo was struck in the leg; Rodolpho in the arm and back. The third attempted murder occurred on May 11, 2003, when Perez rang the doorbell of the Rivera family home looking for Orlando Rivera—a member of the Insane Deuces who was cooperating with police. But Orlando had already moved out of the home for protection, and Orlando's father, Tomas Rivera, answered the door instead. Perez shot Tomas in the arm as soon as he opened the door, before being chased away by another family member.

A grand jury charged Perez, along with fifteen other members of the Insane Deuces, with racketeering con-

---

[1] The organization of the gang is described in detail in *United States v. Morales*, 655 F.3d 608, 615-17 (7th Cir. 2011).

spiracy in violation of 18 U.S.C. § 1962(d) (Count One of the Second Superseding Indictment).[2] Specifically, paragraphs 13 and 14 of Count One related to the January 20, 2002, attempted murders of Gerardo and Rodolpho Rios; paragraph 21 related to the May 11, 2003, attempted murder of Tomas Rivera. In addition to the attempted murders, each of these paragraphs alleged that Perez personally discharged a firearm that caused great bodily harm, permanent disability, and permanent disfigurement to each victim.

The district court severed the case in two because of the large number of defendants. The first trial consisted of seven defendants; a second trial with the remaining defendants—including Perez—commenced on March 31, 2008. However, the district court declared a mistrial for the latter group of defendants on April 2, 2008, and another trial for this group commenced on November 23, 2008. At the conclusion of this second trial, the jury was unable to reach a verdict as to Perez and the court declared a second mistrial as to him.

Perez stood for trial a third time on May 27, 2009. This time, the jury found Perez guilty of racketeering conspiracy, as alleged in Count One of the indictment. In a second round of deliberations, the jury also returned a special verdict form for the purpose of sentencing enhancement. In the special verdict form, the jury found as "proven" that Perez was responsible for

---

[2] The indictment also charged Perez with assault with a dangerous weapon, but this count was dismissed at trial.

the attempted murders of Tomas Rivera and both Rios brothers. The jury also found as "proven" that Perez personally discharged a firearm that proximately caused Rivera's injury. However, the jury found as "not proven" that Perez personally discharged the firearm that caused each of the Rios brothers' injuries. Perez was then sentenced to sixty years' imprisonment.

When the case was given to the jury for its verdict, the government—with permission from the district court—renumbered the paragraphs contained in Count One of the indictment and removed allegations relating to the other defendants no longer on trial. The indictment originally detailed the allegations relating to Perez in paragraphs 13, 14, and 21. The verdict form submitted to the jury renumbered these allegations as paragraphs 13, 14, and 15. Perez did not object to the use of the redacted and renumbered indictment.

## II. ANALYSIS

On appeal, Perez argues that renumbering the paragraphs in Count One of the indictment and removing the allegations against his former co-defendants constitutes a constructive amendment to the indictment in violation of the Grand Jury Clause of the Fifth Amendment.[3] A constructive amendment to an indictment

---

[3] In his opening brief, Perez also argues that the indictment did not name him in the attempted murder of Tomas Rivera, (continued...)

occurs "when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Penaloza*, 648 F.3d 539, 546 (7th Cir. 2011).

Because Perez did not preserve this issue in the district court, he forfeited his claim and we review only for plain error. *United States v. Crowder*, 588 F.3d 929, 938 (7th Cir. 2009). To demonstrate plain error, Perez must show: "(1) an error or defect (2) that is clear or obvious (3) affecting the defendant's substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings." *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010) (*citing United States v. Olano*, 507 U.S. 725, 736 (1993)).

Perez's argument falters for two reasons. First, he runs into a fundamental problem: he makes no claim that the redacted indictment broadened the possible bases for conviction. Rather, Perez urges us to adopt a broad rule that any change to the indictment constitutes a

---

[3] (...continued)

and it was therefore impermissible for the jury to return a special verdict based on this predicate act. But, perhaps after reading the indictment more carefully, Perez abandons this line of argument in his reply brief. Paragraph 21 of Count One of the Second Superseding Indictment clearly alleges that Perez attempted to murder Tomas Rivera, and that Perez personally discharged a firearm in the attempt.

constructive amendment. Accordingly, he posits that the entire forty-three-page indictment in its original form must have been submitted to the jury—and that it was plain error not to—irrespective of the fact that his former co-defendants were no longer on trial. But this is not the law; in *United States v. Miller*, the Supreme Court expressly held that dropping allegations from an indictment that are unnecessary to an offense clearly contained within it does not unconstitutionally amend the indictment. 471 U.S. 130, 144 (1985). *See also United States v. Lorefice*, 192 F.3d 647, 653 (7th Cir. 1999) ("An indictment may be altered without resubmission to the grand jury as long as the alteration makes no material change and there is no prejudice to the defendant."); *United States v. Soskin*, 100 F.3d 1377, 1380 (7th Cir. 1996) ("Narrowing the indictment so that the trial jury deliberates on fewer offenses than the grand jury charged does not constitute amendment.") (internal quotation marks and punctuation omitted).

The district court properly allowed the use of a redacted indictment to avoid confusing the jury and to reflect the fact that only Perez was on trial. The redacted indictment did not remove any allegations necessary to the offense contained within it, and the bases for Perez's conviction were not broadened. Moreover, re-numbering the paragraphs in Count One was also permissible; it is well established that an indictment may be altered when the modification is "merely a matter of form." *Russell v. United States*, 369 U.S. 749, 770 (1962).

Second, Perez does not even begin to demonstrate how redacting the indictment constitutes plain error. Perez

makes no claim that his substantial rights were affected. Nor does he claim that the use of a redacted indictment seriously affected the fairness, integrity, or public reputation of the proceeding.[4] Perhaps hoping to avoid the burden of showing plain error, Perez cites to *Ex parte Bain*, 121 U.S. 1, 13 (1887), for the proposition that a defective indictment deprives a court of jurisdiction to hear the matter. But this holding in *Bain* is no longer good law and was expressly overruled by the Supreme Court in *United States v. Cotton*, 535 U.S. 625, 631 (2002) ("Insofar as it held that a defective indictment deprives a court of jurisdiction, *Bain* is overruled."). Plainly, Perez cannot demonstrate that the district court committed plain error by submitting a redacted indictment to the jury.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Perez's conviction.

---

[4] Indeed, several of Perez's former co-defendants made the *opposite* argument—claiming they were prejudiced by being tried alongside other gang members. *See Morales*, 655 F.3d at 624-29. If anything, reducing the indictment to allegations only involving Perez should have minimized any prejudicial spillover effect from the other allegations contained in the indictment.