In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2433

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CRISTOFER TICHENOR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:09-cr-00171—**Sarah Evans Barker**, *Judge.*

ARGUED APRIL 9, 2012—DECIDED JUNE 13, 2012

Before FLAUM and HAMILTON, *Circuit Judges*, and
FEINERMAN, *District Judge.*[*]

FLAUM, *Circuit Judge.* Cristofer Tichenor pleaded guilty
to armed robbery and discharging a firearm in connec-
tion with robbing a bank. Pursuant to his plea agreement,
he retained the right to appeal certain issues, including

[*] The Honorable Gary S. Feinerman, District Judge for the
United States District Court for the Northern District of
Illinois, sitting by designation.

the applicability of the career offender sentencing guideline at United States Sentencing Guideline ("U.S.S.G.") § 4B1.1. Although Tichenor's counsel initially raised an objection to the application of the career offender guideline, he withdrew this objection at the sentencing hearing. The district court applied the career offender enhancement, based on Tichenor's prior convictions for dealing hash oil and resisting law enforcement, and sentenced him to 300 months' imprisonment.

Tichenor appeals his sentence by arguing that the career offender sentencing guideline is unconstitutionally vague and that the U.S. Sentencing Commission exceeded its authority in enacting the current definition of "crime of violence," found at U.S.S.G. § 4B1.2(a). Although Tichenor likely waived these claims by withdrawing his objection to the application of the career offender guideline at sentencing, we proceed to address his claims because the government has waived the waiver argument. In accordance with our prior holdings on these issues, we conclude that the Sentencing Guidelines ("Guidelines") are not susceptible to vagueness challenges and that the Sentencing Commission did not exceed its authority by promulgating the "crime of violence" definition. We therefore affirm the judgment of the district court.

## I. Background

### A. Factual Background

On the morning of February 18, 2009, a masked man, later identified as Cristofer Tichenor, robbed the Com-

munity Bank in Cicero, Indiana. He fired a gunshot into the ceiling and demanded that the bank tellers and the manager give him the "50's and 100's" out of the safe. He pointed a gun at them as he shouted these commands. He escaped with $52,900 in a small, silver car.

A nearby deputy in an unmarked car was notified about the robbery and attempted to follow the robber. The deputy saw the silver car, which appeared to be vacant. He guessed that the robber had switched cars into a car that had just traveled past him. The deputy pursued the "switch" car. After a car chase, the passenger, who matched the description of the bank robber, fled on foot. The deputy apprehended the driver and radioed for assistance.

Other officers arrived and established a perimeter to cut off escape routes. A bloodhound began to track the passenger and eventually led them to a home, where a resident reported hearing noises in her attic. The officers found and arrested Tichenor in the attic. Along the trail leading to the home, the officers discovered a black glove, a black ski mask, clothing, and a buried trash bag containing $52,900. Among the bills were "bait bills" with prerecorded serial numbers that indicated they were from the Community Bank. DNA testing of the glove and the shoe prints also tied Tichenor to the scene.

**B.  Procedural Background**

Tichenor was indicted for one count of bank robbery under 18 U.S.C. § 2113(a) and (d) (Count One), and one

count of discharging a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A)(iii) (Count Two). He entered into a plea agreement on December 4, 2010, and he entered his guilty plea before the district court two days later. Pursuant to the plea agreement, Tichenor retained the right to appeal certain issues, including the applicability of the career offender guideline at U.S.S.G. § 4B1.1.

The U.S. Probation Office recommended the application of U.S.S.G. § 4B1.1 based on Tichenor's prior Indiana convictions for felony resisting law enforcement (in 2002) and dealing in hash oil. Tichenor objected to the application of the career offender guideline, contending that resisting law enforcement should not be considered a crime of violence.[1]

The district court sentenced Tichenor on June 17, 2011 to 300 months' imprisonment (180 months for Count One and the mandatory minimum of 120 months for Count Two). The court calculated an offense level of 26 for Count One, with a criminal history category of V. This yielded a recommended imprisonment term of 110 to 137 months under the Guidelines for Count One.

At the sentencing hearing, Tichenor withdrew his objection to the application of the career offender guideline, in light of *Sykes v. United States*, 131 S. Ct. 2267 (2011), which affirmed *United States v. Sykes*, 598 F.3d 334 (7th

---

[1] Tichenor did not object to the classification of his hash oil dealing as a controlled substance offense under U.S.S.G. § 4B1.1.

Cir. 2010), and held that Indiana's resisting law enforcement by vehicular flight felony is a violent felony for purposes of 18 U.S.C. § 924(e)(2)(B)(ii). Thus, the district court applied the career offender guideline without objection. The enhancement yielded an offense level of 32 for Count One and a criminal history category of VI with a Guidelines imprisonment term of 210 to 262 months. *See* U.S.S.G. § 4B1.1(b). The government requested 240 months for Count One, incorporating a reduction for acceptance of responsibility.

Tichenor argued for a downward variance, claiming that the career offender guideline overstated the seriousness of his criminal history. He pointed to the compounding effect of the consecutive, mandatory minimum sentence for Count Two and the fact that the predicate offenses for the career offender status were "relatively insubstantial." Judge Barker agreed and departed downward from the career offender guideline's recommendation:

> I do think that there is an unfair compounding effect of the career offender status and the consecutive . . . gun offense, the second count to which you've been found guilty, that requires ten years consecutive.
>
> When you consider the career offender status and that add-on of ten years, it does catapult the sentencing options into a range that is probably, and I so find, greater than necessary to accomplish the other goals of 3553(a) . . . .
>
> . . . I will vary that sentence because of the unfair compounding effect of simply adding that penalty to

> the Count 2 mandatory consecutive penalty, and reduce the guideline range from 210 months to 262 months, which is the starting point, down to 180 months to offset the unfair effects of the compounding . . . .
>
> I also am willing to do that because I think that the career offender designation, while proper under law and under the guidelines, is premised on a series of less significant offenses. . . . [T]he underlying predicate offenses, serious as they are, are not the sorts of criminal conduct that ordinarily result in a . . . career offender status.

By sentencing Tichenor to 180 months on Count One, the court departed downward substantially from the recommended range with the career offender enhancement, though the sentence was still substantially above the range without the enhancement. The district court also imposed the mandatory, consecutive sentence of 120 months on Count Two.

At the close of sentencing, defense counsel confirmed that neither he nor his client had any legal objections to the sentence. After the district court reminded defense counsel that he needed to preserve any issues that he planned to raise on appeal, he responded that Tichenor was preserving a motion to suppress and a motion to dismiss.

## II. Discussion

Tichenor's primary challenge to his sentence is that the career offender sentencing guideline is unconstitu-

tionally vague. We review legal questions, including constitutional challenges to sentences, de novo. *United States v. Figueroa-Espana*, 511 F.3d 696, 705 (7th Cir. 2007). Similarly, we review a district court's legal interpretation of a Guidelines enhancement de novo, although we review any factual findings only for clear error. *United States v. Miller*, 601 F.3d 734, 737 (7th Cir. 2010). Where, however, the defendant fails to properly raise his sentencing objection to the district court, we review only for plain error. *See United States v. Perez*, 581 F.3d 539, 546 (7th Cir. 2009). Under plain error review, the defendant must establish "(1) an error or defect (2) that is clear or obvious (3) affecting the defendant's substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings." *United States v. Perez*, 673 F.3d 667, 669 (7th Cir. 2012) (quoting *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010)).

### A. Whether Tichenor Waived His Objections to the Application of the Career Offender Guideline

Pursuant to Tichenor's plea agreement, Tichenor retained the right to: (1) "object and appeal the applicability of the career offender guideline"; (2) appeal the denial of his motion to dismiss; (3) appeal the denial of his motion to suppress; and (4) file a claim of ineffective assistance of counsel. Prior to the sentencing hearing, Tichenor filed an objection to the application of the career offender guideline on the ground that resisting law enforcement should not be considered a crime of violence.

During the sentencing hearing, defense counsel objected to an enhancement based on Tichenor's supervisory role in the offense but noted that it no longer affected the ultimate calculation: "Given the recent ruling from the Supreme Court in Sykes versus United States, holding that Mr. Tichenor's prior conviction for fleeing from police, felony resisting is a violent felony, and therefore a crime of violence under the guidelines, the career offender guideline trumps the otherwise applicable guidelines calculation." With regard to the career offender enhancement, defense counsel stated, "Our second objection is one at this point that we would withdraw in light of the . . . recent Supreme Court ruling, Your Honor." Later, when referencing Tichenor's prior convictions, defense counsel stated that "both of [them] are, in fact, career offender predicates, we don't dispute that."

The district court agreed, stating: "I agree with your legal analysis that while this guideline issue is trumped by the career offender designation and that . . . the Sykes holding permits and perhaps requires the Court to consider the . . . conviction that the defendant has that makes him eligible for career offender to apply here, it may moot the other objections." The court nevertheless proceeded to resolve the first objection on the merits, concluding that the enhancement was appropriate due to Tichenor's leadership role and his involvement of a minor (as the driver). Turning to the objection regarding whether resisting law enforcement qualifies as a "crime of violence," Judge Barker stated: "I will allow the defendant to withdraw, as he properly must, his objection based on Sykes versus United States since that decision

was handed down about a week ago, that undermines the legal rationale for that objection. So Objection No. 2 is withdrawn."

The Supreme Court has distinguished forfeiture as "the failure to make the timely assertion of a right" and waiver as "the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)) (internal quotation marks omitted). We have repeatedly recognized that "the withdrawal of an objection generally results in a waiver of that argument on appeal." *United States v. Venturella*, 585 F.3d 1013, 1019 (7th Cir. 2009); *see also United States v. Kincaid*, 571 F.3d 648, 654 (7th Cir. 2009) ("[W]e have held that a defendant waived his right to challenge a sentencing calculation by initially objecting to the calculation, but later withdrawing the objection." (citation omitted)). In *Venturella*, we determined that the defendant's withdrawal of a sentencing objection resulted in waiver, not merely forfeiture. 585 F.3d at 1019. In *United States v. Knox*, we reached the same conclusion, reasoning that the clear statements from defense counsel and the district court indicated that the withdrawal of the objection was a "knowing waiver." 624 F.3d 865, 875 (7th Cir. 2010); *see also Kincaid*, 571 F.3d at 655-56. When an issue is waived, we cannot review it at all "because a valid waiver leaves no error for us to correct on appeal." *United States v. Harris*, 230 F.3d 1054, 1058-59 (7th Cir. 2000).

There are two ways to construe Tichenor's withdrawal of his objection at the sentencing hearing. His

withdrawal could be viewed broadly: Tichenor knowingly withdrew all objections to the application of the career offender enhancement and thus waived his right to appeal his designation as a career offender on any ground. Alternatively, his withdrawal could be viewed narrowly: Tichenor knowingly withdrew only the argument that resisting arrest does not qualify as a crime of violence and thus only waived his right to appeal his sentence on this ground. The generalized terms that Tichenor's counsel used favor the broad interpretation, but the fact that the withdrawal was prompted by *Sykes*—which spoke only to the narrow issue—favors the narrow interpretation. The government actually construes Tichenor's withdrawal narrowly and urges us to view his claims as forfeited, rather than waived. We therefore need not decide on the appropriate construction because, even if Tichenor had waived all grounds for challenging the application of the career offender guideline, the government has waived the waiver argument. Thus, we proceed by viewing Tichenor's two claims as forfeited due to his failure to raise these specific claims to the district court. *See United States v. Thornton*, 642 F.3d 599, 605 (7th Cir. 2011). We review these claims only for plain error. *See id*.

## B.   Whether the Career Offender Sentencing Guideline Is Unconstitutionally Vague

Tichenor's first argument on appeal is that he should not have been sentenced as a career offender because the career offender sentencing guideline is unconstitu-

tionally vague due to its definition of "crime of violence." Due process concerns dictate that a law is "void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "It is settled that, as a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, or is so indefinite that it encourages arbitrary and erratic arrests and convictions is void for vagueness." *Colautti v. Franklin*, 439 U.S. 379, 390 (1979) (internal quotation marks and citations omitted). Tichenor's vagueness challenge, however, is not directed at a criminal statute but at a sentencing guideline. This distinction is crucial as we have categorically held that "the Guidelines are not susceptible to attack under the vagueness doctrine." *United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999).

Our conclusion that the Guidelines cannot be unconstitutionally vague is rooted in our understanding of the vagueness doctrine. In *United States v. Brierton*, we interpreted the vagueness doctrine as holding that "a person cannot be held liable for conduct he could not reasonably have been expected to know was a violation of law," 165 F.3d at 1138, and as "presum[ing] a law that attempts to proscribe or prescribe conduct," *id*. at 1139. In holding that the Guidelines cannot be challenged for vagueness, we reasoned:

> The Guidelines do not establish the illegality of any conduct. Rather, they are "directives to judges for their guidance in sentencing convicted criminals, not

> to citizens at large." *United States v. Wivell*, 893 F.2d 156, 160 (8th Cir. 1990). In other words, the Guidelines are designed to assist and limit the discretion of the sentencing judge. *United States v. Macias*, 930 F.2d 567, 571-72 (7th Cir. 1991). It is settled that, with the exception of capital cases, a defendant has no constitutional right to such directives. *Lockett v. Ohio*, 438 U.S. 586, 603, 98 S. Ct. 2954, 57 L.Ed.2d 973 (1978) . . . . As such, the Guidelines are not susceptible to attack under the vagueness doctrine. Since there is no constitutional right to sentencing pursuant to the Guidelines, the discretionary limitations the Guidelines place on the sentencing judge do not violate a defendant's right to due process by reason of vagueness. *Wivell*, 893 F.2d at 159-60.

*Id*. at 1139. We recently reaffirmed this holding in *United States v. Idowu*, 520 F.3d 790 (7th Cir. 2008). In *Idowu*, we rejected the defendant's claim that the "clearly improbable" standard set forth in U.S.S.G. § 2D1.1's application note was unconstitutionally vague. *Id.* at 795. We quoted our reasoning from *Brierton* and concluded that "the vagueness doctrine does not apply to the Guidelines." *Id.* at 795-96. We also mentioned that, even if the vagueness doctrine did apply to the Guidelines, this particular vagueness challenge could not prevail because the standard at issue is sufficiently clear. *See id.* at 796.

Our conclusion in *Brierton* (and later in *Idowu)* is bolstered by the Supreme Court's watershed holding in *United States v. Booker*, 543 U.S. 220 (2005), that the Guidelines are only advisory. We have recognized that

*Booker* demoted the Guidelines from "rules to advice." *United States v. Roche*, 415 F.3d 614, 619 (7th Cir. 2005); *see also United States v. Bullion*, 466 F.3d 574, 575 (7th Cir. 2006) ("The standard of reasonableness, introduced by the *Booker* decision, confers broad sentencing discretion. The judge must consider the guidelines but is in no sense bound by them."). The Supreme Court has made clear that "[a]ny expectation subject to due process protection . . . that a criminal defendant would receive a sentence within the presumptively applicable guideline range did not survive" the *Booker* decision. *Irizarry v. United States*, 553 U.S. 708, 713-14 (2008). The Court has further stated that "[n]ow faced with advisory Guidelines, neither the Government nor the defendant may place the same degree of reliance on the type of 'expectancy' that gave rise to a special need for notice in *Burns* [*v. United States*, 501 U.S. 129 (1991)]." *Id.* The vagueness doctrine is concerned with providing fair notice and preventing arbitrary enforcement. Since the Guidelines are merely advisory, defendants cannot rely on them to communicate the sentence that the district court will impose.[2] Defendants' inability to look to the Guidelines for notice underscores why, in addition to our reasoning in *Brierton* and *Idowu*, they cannot bring vagueness challenges against the Guidelines.

Tichenor urges us to overrule *Brierton* and *Idowu* on the ground that they did not mention or distinguish *United*

---

[2]  Indeed, in the present case, the district court exercised its post-*Booker* discretion by departing downward substantially from the range recommended by the Guidelines.

*States v. Batchelder*, 442 U.S. 114, 123 (1979), a Supreme Court case addressing whether the overlapping nature of two sentencing statutes rendered both unconstitutionally vague. The Court held that as long as the criminal provisions clearly defined the conduct prohibited and the punishment authorized, due process was satisfied. *Id.* Of relevance to the present case, the Court mentioned that "vague sentencing provisions may pos[e] constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *Id. Batchelder*, which was decided two decades before our decision in *Brierton*, does not conflict with *Brierton* or *Idowu.* The isolated comment from *Batchelder* is mere dictum, addressing circumstances that were not before the Court. *See United States v. Banda-Zamora*, 178 F.3d 728, 729 (5th Cir. 1999).

Moreover, the government correctly asserts that *Batchelder* involved sentencing statutes, rather than the Guidelines, and thus we had no need to confront *Batchelder* in *Brierton* or *Idowu.* Tichenor rejects this explanation, arguing that *Batchelder* did not refer to the Guidelines only because they were not in place at that time. Tichenor's argument fails to recognize that even though the Guidelines were not in place when the Supreme Court decided *Batchelder*, the Guidelines were in place when we decided *Brierton.* Further, given *Booker*'s transformation of the Guidelines from rules to advice, it is doubtful that any significance can presently be attached to the *Batchelder* dictum. Tichenor nevertheless attempts to blur the statute—Guideline distinction by arguing that "the Guidelines are followed as if

they were statutes," citing to *United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006). But all we observed in *Demaree* was that advisory guidelines remain likely to influence sentencing decisions. *See id.* at 794. The sentencing judge's authority to exercise discretion distinguishes the Guidelines from criminal statutes in a significant and undeniable manner.

Tichenor does not present any other compelling reasons to overrule *Brierton* and *Idowu*. Overruling precedent generally requires articulable reasons, such as precedents that have become unworkable in practice or that are based on unsound principles. *See Sykes*, 598 F.3d at 338 (citing *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 546 (1985)). Our determination that the Guidelines are not susceptible to vagueness challenges has only been bolstered as a result of *Booker*.[3]

---

[3] Although we are not persuaded to revisit the position we announced in *Brierton* and reaffirmed in *Idowu*, we recognize that there is some disagreement as to whether the Guidelines can be challenged on vagueness grounds. *See United States v. Bennett*, 329 F.3d 769, 777 n.6 (10th Cir. 2003) (recognizing the circuit conflict). Our position is in accord with the Fifth, Sixth, and Eighth Circuits, which have all concluded that the Guidelines are not susceptible to vagueness challenges. *See United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990); *United States v. Smith*, 73 F.3d 1414, 1417-18 (6th Cir. 1996); *United States v. Wivell*, 893 F.2d 156, 159-60 (8th Cir. 1990). *Wivell* contains the most extensive reasoning, beginning with the observation that the Guidelines serve only as directives to guide judges in

(continued...)

As an alternative to overruling *Brierton* and *Idowu*, Tichenor urges us to distinguish them on the ground that the career offender guideline is unlike the provisions considered in those cases. This contention must fail because our holdings in *Brierton* and *Idowu* did not rest on the specific provisions at issue. *Brierton* contained no analysis of the specific provision, *see* 165 F.3d at 1139, and *Idowu* only considered the specific provision

---

[3] (...continued)
sentencing and do not define illegal conduct. *See* 893 F.2d at 160. The Eighth Circuit noted that the Constitution does not require sentencing guidelines and then held: "Because there is no constitutional right to sentencing guidelines—or, more generally, to a less discretionary application of sentences than that permitted prior to the Guidelines—the limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague." *Id.* The Ninth Circuit is the only circuit to definitively hold that the Guidelines are susceptible to vagueness challenges (out of deference to *Batchelder*), *see United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997), though the Third Circuit has assumed the same without directly addressing the issue, *see United States v. Maurer*, 639 F.3d 72, 77-78 (3d Cir. 2011). The Second and Tenth Circuits have declined to take a position. *See United States v. Johnson*, 221 F.3d 83, 99 (2d Cir. 2000); *United States v. Negri*, 173 F.3d 865 (10th Cir. 1999) (unpublished table decision) (expressing "serious doubt" that vagueness challenges can be brought). Even when circuit courts have discussed the merits, they have universally concluded that the guideline at issue was not unconstitutionally vague. *See, e.g., Maurer*, 639 F.3d at 78; *Johnson*, 130 F.3d at 1354.

after unambiguously concluding that the Guidelines are not susceptible to vagueness challenges, *see* 520 F.3d at 795-96. Moreover, Tichenor does not explain what makes the career offender guideline "more problematic" than the guidelines challenged in our prior cases.

Although we find no reason to depart from *Brierton* and *Idowu*, we note that Tichenor's vagueness objection would fare no better if we were to reach the merits. The defendant has the burden of establishing that the law is vague as applied to the facts of his case, rather than a hypothetical situation. *See United States v. Calimlim*, 538 F.3d 706, 710-11 (7th Cir. 2008) (citing *Chapman v. United States*, 500 U.S. 453, 467 (1991)); *Brierton*, 165 F.3d at 1139. Generally, this inquiry requires us to determine whether the defendant was on notice that his conduct was illegal. Here, we must adjust this inquiry to fit the Guidelines by asking whether, at the time of the armed robbery, Tichenor was on notice that his prior conviction for resisting law enforcement qualifies as a "crime of violence."

Section 4B1.1(a) of the Guidelines provides that a defendant qualifies as a career offender if: (1) he was at least 18 when he committed the instant offense; (2) the instant offense is a felony that is either a "crime of violence or a controlled substance offense"; and (3) he has at least two prior felony convictions for either "a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Section 4B1.2(a) defines "crime of violence" as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Tichenor contends that resisting law enforcement could only be construed as a "crime of violence" under the residual clause of § 4B1.2(a)(2). For several reasons, Tichenor has failed to establish that this clause was vague as applied to him.

First, the criminal statutes were clear at the time of the bank robbery that Tichenor faced up to 25 years' imprisonment for the robbery, pursuant to 18 U.S.C. § 2113(d), and 10 additional years for discharging of a firearm during a crime of violence, pursuant to 18 U.S.C. § 924(c)(1)(A)(iii). These statutes provide notice of the illegality of Tichenor's conduct and the consequences that he could face.

Second, the law was sufficiently clear at the time of the armed robbery (in 2009) that a conviction for felony resisting law enforcement qualifies as "crime of violence." We had ruled in *United States v. Spells* that the Indiana felony for resisting law enforcement by vehicular flight qualifies as a "crime of violence" and a "violent felony." 537 F.3d 743, 752-54 (7th Cir. 2008). It is of no consequence that appellate courts had reached differing conclusions, *see Sykes*, 131 S. Ct. at 2272 (listing cases), because this circuit's position, which was binding on Tichenor, provided him with notice that conduct similar to

his resisting law enforcement qualifies as a crime of violence. Regardless of any uncertainty as to the scope of the residual clause in other contexts and which methodology to apply, Tichenor's prior offense had been clearly identified as qualifying as a crime of violence in this circuit at the time of the armed robbery.

Third, Tichenor admits that his decision to enter into a plea bargain was based in part on his view of how the career offender guideline "should be interpreted." But the vagueness doctrine is concerned only with whether the defendant had notice of what the law is, not what the law should be or might one day become.

Finally, we are reviewing only for plain error because Tichenor did not raise a vagueness objection to the district court. We have held that the Guidelines are not susceptible to vagueness challenges, and we held (in 2008) that vehicular flight qualifies as a crime of violence. We are confident that no error has occurred, let alone an error that is "clear or obvious." *Perez*, 673 F.3d at 669.

We once again hold that the Guidelines, as a matter of law, are not susceptible to vagueness challenges. The sound reasoning set forth in *Brierton*, which we affirmed in *Idowu*, has only been strengthened by the shift of the Guidelines to advisory status.

## C. Whether the Sentencing Commission Exceeded its Authority in Promulgating the Current Definition of "Crime of Violence"

Tichenor's other claim on appeal is that the Sentencing Commission exceeded its authority when it defined "crime

of violence" in U.S.S.G. § 4B1.2(a) differently from the definition supplied by Congress. Like his vagueness challenge, Tichenor raises this challenge for the first time on appeal, and the government argues for for-feiture rather than waiver.

Congress has instructed the Sentencing Commission to promulgate "guidelines, as described in this section," which define "the appropriate . . . term of imprisonment." 28 U.S.C. § 994(a)(1)(B). The Commission must establish categories of offenses, taking into account "the nature and degree of harm caused by the offense," "the community view of the gravity of the offense," and "the deterrent effect a particular sentence may have on the commission of the offense by others." *Id.* § 994(c). In the Sentencing Reform Act of 1984, Congress directed the Sentencing Commission to specify a substantial term of imprison-ment for career offenders. *See id.* § 994(h). Congress provided in 18 U.S.C. § 16 a definition of "crime of vio-lence" for the Commission to use.[4] *See Leocal v. Ashcroft*, 543 U.S. 1, 6 (2004). The initial version of the career of-fender guideline did incorporate this definition, *see* U.S.S.G. § 4B1.2 (1987); however, the current version contains a definition of "crime of violence" derived from

---

[4] Section 16 defines "crime of violence" as "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16.

the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B). This change was apparently made to improve the definition's clarity. *See* U.S.S.G. App. C, amend. 268 (Nov. 1, 1989).

We have expressly held that the Sentencing Commission had the authority to adopt the current definition of "crime of violence" at U.S.S.G. § 4B1.2. *See United States v. Rutherford*, 54 F.3d 370, 374 n.11 (7th Cir. 1995), *abrogated on other grounds by Begay v. United States*, 553 U.S. 137 (2008). In *Rutherford*, we recognized that even if the Sentencing Commission adopted a broader definition than Congress envisioned, the Commission clearly has the authority to consider the relevant criminal history of offenders and is directed by 28 U.S.C. § 994(i) to ensure that the Guidelines specify a sentence for a substantial term of imprisonment for defendants with a history of two or more felony convictions. *Id.* We also noted that the legislative history of the Sentencing Reform Act states that 28 U.S.C. § 994(h), the statute directing the Sentencing Commission to create the career offender guideline, is "not necessarily intended to be an exhaustive list of the types of cases in which the guidelines should specify a substantial term of imprisonment, nor of types of cases in which terms at or close to authorized maxima should be specified." *Id.* (citing S. Rep. No. 98-225, 98th Cong., 2d Sess. 176 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3359). We have recently reaffirmed that Congress gave the Sentencing Commission very broad discretion in drafting the Guidelines. *See United States v. Knox*, 573 F.3d 441, 446-50 (7th Cir. 2009) (confirming the Commission's authority to go

beyond specifically enumerated drug offenses within 28 U.S.C. § 994(h) in its determination of which controlled substance offenses qualify for career offender treatment under U.S.S.G. § 4B1.1).

Tichenor's sole argument against applying our clear precedent is that *Rutherford* did not mention that Congress had specified the definition to be used in 18 U.S.C. § 16. He contends that, even if the Sentencing Commission had the authority to determine that other prior offenses qualify, the benchmark for that determination should be the definition provided by Congress. Tichenor does not provide any legal support for this view, nor does he explain how the current definition has departed from the "benchmark" provided by Congress. Tichenor has failed to prove that a plain error has occurred, and we hold that the Sentencing Commission acted within its authority when defining "crime of violence" in U.S.S.G. § 4B1.2(a).

## III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.