HAMILTON, Circuit Judge,
joined by POSNER, FLAUM, and EASTERBROOK, Circuit Judges, dissenting.
By now the Supreme Court’s decision in Johnson v. United States, — U.S.-, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), is familiar to all in the federal criminal justice system. Johnson held that the “residual clause” in the Armed Career Criminal Act definition of a violent felony, see 18 U.S.C. § 924(e)(2)(B), is unconstitutionally vague. The en banc majority now holds that the reasoning of Johnson extends to a similar residual clause in an advisory Sentencing Guideline on career offenders, holding the guideline provision unconstitutionally vague. The majority also overrules United States v. Tichenor, 683 F.3d 358 (7th Cir. 2012), which held, correctly in my view, that the advisory Guidelines are not susceptible to vagueness challenges.
The majority’s holding is both premature and erroneous. There is no need for us to decide this now. There is already a circuit split, and the Supreme Court is likely to rule on this question in the coming term. See Beckles v. United States, 616 Fed.Appx. 415 (11th Cir. 2016), cert. granted, — U.S. -, 136 S.Ct. 2510, 195 L.Ed.2d 838 (2016), which should be argued in the autumn of 2016. We should not hurry to send many eases back to district courts for re-sentencings that may well prove unnecessary. I respectfully dissent.
The best course at this point would be for this court simply to wait for the Supreme Court to decide the issue in Beckles. If we must reach the merits now, we should stick with Tichenor and agree with the Eleventh Circuit, which decided in United States v. Matchett, 802 F.3d 1185, 1193-96 (11th Cir. 2015), that the so-called “residual clause” in the advisory Guideline definition of a crime of violence, see U.S.S.G. § 4B1.2(a)(2), is not unconstitutionally vague because it is only advisory. Judge Pryor’s opinion in Matchett is careful and persuasive. Doctrinal and practical considerations support that view. After all, how can non-binding advice be unconstitutionally vague?
To begin with the doctrine, the residual clauses in the Armed Career Criminal Act and the advisory Sentencing Guidelines have identical language, but their legal effects differ in a fundamental way. That difference should lead to different answers on the issue of constitutional vagueness. *727 The vague definition in the statute led directly to higher, often much higher, mandatory minimum and maximum sentences. The most common effect of the Armed Career Criminal Act provision was to require a fifteen-year mandatory minimum sentence for a felon in possession of a firearm when the statutory maximum was otherwise just ten years. See Johnson, 135 S.Ct. at 2560 (“Invoking so shapeless a provision to condemn someone to prison for 15 years to life does not comport with the Constitution’s guarantee of due process.”).
In contrast, the definition in the advisory Sentencing Guidelines leads to no direct consequences of any kind. It simply gives the sentencing judge advice about an appropriate sentence. Unlike in statutory cases, the parties are free to argue that the Guidelines’ advice about the defendant’s criminal history is either too harsh or too lenient. The judge may accept the Guidelines’ advice or reject it. In fact, the law requires the judge to treat the advice as only advice. A judge who presumes the Guidelines’ advice produces a reasonable sentence commits reversible error. Gall v. United States, 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); Rita v. United States, 551 U.S. 338, 351, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007).
The doctrinal foundation of the majority opinion is inconsistent with the overall sweep of Supreme Court decisions following United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which held the Guidelines advisory as the remedy for the Sixth Amendment problems with mandatory sentencing rules that require judicial fact-finding. Since Booker, the Supreme Court has been trying to maintain a delicate balance, recognizing that the difference between “binding law” and “advice” depends on the different standards of appellate review. See Gall, 552 U.S. at 50-51, 128 S.Ct. 586.
Since Booker, the Court has treated the Guidelines essentially as advice for almost all purposes, but as closer to binding law for just one. For purposes, of the Sixth Amendment rights to jury trial, to proof beyond a reasonable doubt, and to grand jury indictment, the Guidelines are now advice. Booker, 543 U.S. at 245, 125 S.Ct. 738. For purposes of due process notice, they are advice. Irizarry v. United States, 553 U.S. 708, 714, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008). For purposes of sentencing policy, they are also advice. Kimbrough v. United States, 552 U.S. 85, 110-11, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (sentencing court could reject guideline advice on ratio of crack and powder cocaine sentences).
In one sense, though, the Court has treated the Guidelines as more law-like. For purposes of the Ex Post Facto Clause, the Guidelines are closer to the binding law end of the spectrum. Peugh v. United States, 569 U.S.-, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013). The analysis in Peugh was based on the persuasive effect the Guidelines have, including “anchoring” effects on sentencing judges. It is not easy to reconcile Peugh with the cases treating the Guidelines as advisory, particularly since constitutional doctrine allows completely unguided sentencing discretion, at least apart from capital cases. Perhaps Peugh is the first sign of a sea-change in this area of the law, but given the extensive case law treating the Guidelines as truly advisory, that remains to be seen.[1]
*728 If the Supreme Court extends the rationale of Peugh, as the majority does here, and embraces wholeheartedly the concept that the Guidelines are like laws, that result would be difficult to reconcile with the Booker remedy, which spared the Guidelines from Sixth Amendment challenges by making them advisory. The delicate doctrinal balance the Court has tried to maintain since Booker would be threatened by extending vagueness, jurisprudence to the advisory Guidelines.
In Welch v. United States, 578 U.S. -, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016), the Supreme Court held that Johnson is retroactive, applicable on collateral review of federal sentences under 28 U.S.C. §2255. If Johnson is extended to the advisory Guidelines, the argument will be powerful for applying that new holding retroactively. If that is the just result, so be it. But we should recognize the likely consequences. Federal courts would need to revisit thousands of previous guideline sentences that relied on the residual clause in the career criminal guidelines.
And what would be the point? The difference between statutory mandates and advisory Guidelines means that the practical consequences of the vagueness holdings differ dramatically. In the Armed Career Criminal Act cases affected by Johnson, many cases must result in lower sentences, and in virtually all cases, lighter sentences are. reasonably likely on re-sentencing. But if guideline sentences are remanded on the theory that Johnson should apply to the advisory Guidelines, in every case that is remanded the district court will be free to impose exactly the same sentence again. In fact, the district courts probably should do so.
To understand why, consider the intellectual gymnastics required by the “categorical” approach to recidivist enhancements. Applying that approach, courts must focus on elements of a prior offense of conviction and must ignore what the defendant actually did. The results are often arbitrary. See, e.g., Mathis v. United States, 579 U.S.-, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016) (breadth of state burglary statute, which included burglarizing vehicles, meant that defendant’s prior convictions for actually burglarizing occupied houses did not count as convictions of “violent felonies”). Yet both before and after Booker, the Guidelines have allowed sentencing judges to examine what the defendant actually did. See 18 U.S.C. § 3553(a)(1) (requiring consideration of “history and characteristics of the defendant”); § 3661 (“No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.”); U.S.S.G. §4A1.3 cmt. (encouraging departures where guideline criminal history is over- or under-representative); cf. United States v. Sonnenberg, 628 F.3d 361, 367-68 (7th Cir. 2010) (applying categorical approach to vacate career criminal enhancement but en- *729 eouraging district judge on remand to consider defendant’s actual conduct in case of child sex abuse).
As a result, we should expect little gain in terms of fairness for defendants by telling sentencing judges (a) they cannot use the residual clause in the career offender Guideline, but (b) they remain free to consider available information about the defendant’s actual conduct in the earlier crime and to sentence accordingly. In fact, they should be doing so already. The judge’s job is first to calculate the guideline range but then to exercise judgment and discretion under § 3553(a) in light of all the available information.
If Johnson is extended to the Guidelines, and if a judge were to reduce the sentence because of such a reversal, that decision might be evidence that the judge did not do his/her job at the initial sentencing. No facts would be different, only the advice that the judge was supposed to evaluate critically the first time around. Absent new material facts, a different sentence on remand would tend to show that the judge followed the Guidelines too mechanically, perhaps presuming they were reasonable without assessing the defendant’s individual history and characteristics and the particular circumstances of the case.[2]
In considering the consequences here, the scope of the majority’s vagueness holding under the Guidelines will also be difficult to limit. As the Eleventh Circuit noted in Matchett, if we extend due process vagueness doctrine to the advisory Guidelines, many guideline sentences will be subject to challenge. 802 F.3d at 1196.1 do not see a principled way to avoid extending such a holding beyond the residual clause in the crime of violence definition to other provisions in the Guidelines that are at least as vague if not more so.
Consider, for example, the enhancements for “sophisticated means” in fraud crimes, § 2Bl.l(b)(10); the “vulnerable victim” in § 3Al.l(b) (defined as someone who is “unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct”' — -which sounds a lot like a residual clause); aggravating roles in § 3B1.1 (based on “otherwise extensive” criminal activity); or “abuse of trust” under § 3B1.3. Many departure provisions in Part 5K of the Guidelines are quite vague, as is the provision in § 4A1.3 for over- or under-representative criminal history. Even the fundamental concept of “relevant conduct” in § 1B1.3 could easily be challenged as vague if we are worried about whether defendants have fair notice of the consequences of their crimes. Yet this pervasive vagueness in Guideline provisions is not a bug in the system. It is a feature. It is intended to provide sentencing judges with needed flexibility.
Perhaps one might draw a line between the residual clause and every other provision of the advisory Guidelines, by simply declaring that the result is limited to categorical determinations rather than application of vague standards to specific facts. But it is difficult to see a principled basis for such a limited rule, particularly since § 3553(a) already calls upon judges to take into account the real-world facts of prior convictions. The majority has opened the door to vagueness challenges to any advisory Guidelines. As a matter of broader constitutional doctrine, including the difference between binding and advisory *730 Guidelines that is essential to the Court’s Sixth Amendment jurisprudence, it would be more sound to maintain instead the distinction between vague sentencing advice (permitted) and a vague sentencing statute with mandatory consequences (not permitted).
After all, judges can find vague sentencing advice from many sources. Section 3553(a)(2) tells judges in a vague and contradictory way to follow several conflicting theories of punishment at once, so that a sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to crimes, protect the public from further crimes of the defendant, and rehabilitate the defendant. Judges can find further vague or indeterminate advice about sentencing in law review articles, philosophical reflections on crime and punishment, advice from probation officers and law clerks, and even from appellate opinions. The fact that some' of the advice may be vague should not render the sentence unconstitutional.
‘ I recognize that the Guidelines have a special, elevated status among those other available sources of advice, but they do remain advisory. And as we and later the Supreme Court consider the vagueness issue here, it is worth remembering that one simple remedy to a regime of somewhat vague advisory Guidelines would be to eliminate some or all of the advice and to leave sentencing judges to their own devices. The permissibility of such discretion has been consistent in all of the Supreme Court’s recent sentencing decisions under the Sixth Amendment, from Apprendi v. New Jersey, 530 U.S. 466, 481, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); id. at 544-45, 120 S.Ct. 2348 (O’Connor, J., dissenting), through Booker, 543 U.S. at 233, 125 S.Ct. 738, and Alleyne v. United States, 570 U.S. -, 133 S.Ct. 2151, 2163, 186 L.Ed.2d 314 (2013).
Such unguided discretion would be the vaguest regime of all. Defendants would face even greater uncertainty about potential sentences and even greater risk of arbitrary variation in sentences. Yet that is all perfectly constitutional. Why not allow some vagueness in the Guidelines, whose advisory status is essential to avoid Sixth Amendment violations?
Another permissible remedy would be to impose mandatory sentences by statute, denying judges any flexibility. But stripping sentencing judges of discretion leads to other unfortunate results, including delegating sentencing decisions to prosecutors’ charging decisions. Better to leave the Guidelines as true guidelines, despite their vagueness and flexibility.

. In extending Johnson to the Guidelines, the Sixth Circuit has tried to split hairs even more finely, saying that for one due process notice purpose — "adversarial notice” — the Guidelines are advisory, as in Irizarry, while for a supposedly different due process notice purpose — "ex ante notice” — they are closer to binding laws. United States v. Pawlak, 822 *728 F.3d 902, 909-10 (6th Cir. 2016). This distinction cannot withstand scrutiny. The hypothesis of "ex ante notice" is that a person deciding whether to commit a crime is entitled to know what punishment the law prescribes. The answer is the statutory sentencing range, regardless of the Guidelines. The hypothetically rational candidate for prosecution should know already there is no guarantee of a guideline sentence. Under Booker, Gall, Kimbrough, and § 3553(a), the sentencing court will be free to impose a non-guideline sentence for many reasons. That is exactly the same knowledge imputed to a defendant and defense counsel on the eve of sentencing. Given that knowledge, the Court held in Irizarry, due process does not require further advance notice to the defense about reasons why the sentencing judge may be considering not imposing a guideline sentence.

. Federal prisoners who were sentenced as career offenders based on the residual clause before Booker, while the Guidelines were still considered binding, might have a much stronger argument for extending Johnson to their sentences. These cases do not present that issue, and I express no views on it.