[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-14756-J

_____

IN RE: WILLIAM HUNT,

Petitioner.

_____

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)

_____

Before WILSON, ROSENBAUM and JILL PRYOR, Circuit Judges.

B Y   T H E   P A N E L :

William Hunt seeks to file a second or successive 28 U.S.C. § 2255 motion

based on *Johnson v. United States*.[1]   In *Johnson*, the Supreme Court held that the

residual clause of the Armed Career Criminal Act (ACCA) is unconstitutionally

vague.   Hunt claims that his 18 U.S.C. § 924(c) conviction for using a firearm

during a crime of violence is invalid under *Johnson* because it arose under that

section's residual clause, which is similar to the ACCA's residual clause.

Specifically, he argues that his conviction is based on an offense—armed bank

---

[1] 576 U.S. ___, 135 S. Ct. 2551 (2015).

robbery, in violation of 18 U.S.C. § 2113(a) and (d)—that qualifies as a crime of violence via § 924(c)'s residual clause.   Hunt also asserts that his advisory United States Sentencing Guidelines (Guidelines) sentence violates *Johnson* because it was enhanced pursuant to the residual clause in the career offender provision of the Guidelines—a clause that is also similar to the ACCA's residual clause.   However, at this time, *In re Hines*[2] forecloses Hunt's § 924(c) claim, and *United States v. Matchett*[3] forecloses his Guidelines-based claim.

*Hines* narrowly held that an armed bank robbery, in violation of § 2113(a) and (d), qualifies as a crime of violence under § 924(c)'s elements clause—as opposed to residual clause—if the record makes clear that the applicant "by force, violence and intimidation, did take from the person or presence of [a bank employee] monies belong[ing] to a federally-insured bank and that in doing so, . . . assault[ed] and put in jeopardy the life of [others] by use of a dangerous weapon."   *See Hines*, slip op. at 6 (internal quotations marks omitted and alteration adopted).   Here, the record demonstrates that Hunt's § 2113(a) and (d) armed bank robbery conviction involved these various elements.   Therefore, under *Hines*, the conviction is an

---

[2]  ___ F.3d ___, No. 16-12454 (11th Cir. June 8, 2016).
[3]  802 F.3d 1185 (11th Cir. 2015).

2

elements-clause offense and does not implicate § 924(c)'s residual clause or *Johnson*.[4]

Turning to Hunt's Guidelines-based claim, *Matchett* precludes the application of *Johnson* to an advisory Guidelines sentence like Hunt's.   *Matchett* determined that the void-for-vagueness doctrine does not apply to advisory Guidelines and therefore *Johnson* cannot invalidate a post-*Booker*[5] Guidelines sentence.   *See Matchett*, 802 F.3d at 1193–96.   At the same time, we note that the Supreme Court recently granted certiorari in *Beckles v. United States*, 616 F. App'x 415 (11th Cir. 2015), *cert. granted*, No. 15-8544 (U.S. June 27, 2016), which raises the question of whether *Johnson* applies to the Guidelines.   Should *Beckles* abrogate our decision in *Matchett*, Hunt may be able to file a § 2255 petition based on *Johnson*.

Accordingly, Hunt's application is denied without prejudice, with leave to file another application after the Supreme Court's decision in *Beckles*.

**APPLICATION DENIED.**

---

[4] *Hines* is an order that denied an application like Hunt's.   That means *Hines*, like thousands of cases post-*Johnson*, was decided without briefing, without the benefit of a complete record, and is not appealable.   *See In re McCall*, ___ F.3d ___, No. 16-12972, slip op. at 5–7 (11th Cir. June 17, 2016) (Martin, J., concurring) (Orders like *Hines* "are typically based on nothing more than a form filled out by a prisoner, with no involvement from a lawyer.").   Yet, *Hines* is binding precedent, and we follow it here.   *See In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015).

[5] *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).

3

WILSON, Circuit Judge, concurring, joined by JILL PRYOR, Circuit Judge, and as to Parts I(A) and II, ROSENBAUM, Circuit Judge:

It is a violation of due process for a court to rely on a criminal sentencing scheme "so vague that it fails to give ordinary people fair notice . . . or so standardless that it invites arbitrary enforcement." *See Johnson v. United States*, 576 U.S. ___, ___, 135 S. Ct. 2551, 2556–57 (2015). Post-*Booker*,[1] the touchstone of appellate review of sentences is reasonableness—an inquiry that turns on a district court's application of the United States Sentencing Guidelines (Guidelines). That is to say, Supreme Court precedent establishes an expectation that defendants will receive reasonable sentences, and we rely on the Guidelines to determine reasonableness. Because the Guidelines drive appellate review under this sentencing scheme, fatally vague Guidelines provisions necessarily result in *both* "arbitrary enforcement by [courts]" and denial of "fair notice." *See id.* at 2557. Therefore, vague Guidelines provisions violate the due process clause's void-for-vagueness doctrine. The *Matchett*[2] panel's decision to the contrary is erroneous. And importantly, given the "central," "significant role" that the Guidelines play in sentencing, *see Molina-Martinez v. United States*, 578 U.S. ___, ___, 136 S. Ct. 1338, 1341–42 (2016), *Matchett*'s holding is unworkable. Appellate judges like myself must now review sentences that were imposed based

---

[1] *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).
[2] *United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015).

on language that the Supreme Court has deemed "hopeless[ly]

indetermina[te]"—the text of the residual clause in § 4b1.2(a) of the Guidelines.

*See Johnson*, 135 S. Ct. at 2558.   Accordingly, I believe *Matchett* was wrongly

decided.

Although Hunt's Guidelines-based claim is currently foreclosed by *Matchett*,

I write separately to explain why I disagree with the holding in *Matchett*.[3]

I

Under our post-*Booker* sentencing regime, appellate courts must review all

sentences for reasonableness, and the Guidelines direct each step of that review.

*See Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).

Consequently, "[t]he Sentencing Guidelines provide the framework for the tens of

thousands of federal sentencing proceedings that occur each year."   *See*

*Molina-Martinez*, 136 S. Ct. at 1342.

We are required to assess the reasonableness of a sentence in two steps.   *See*

*Gall*, 552 U.S. at 51, 128 S. Ct. at 597.   We "must first ensure that the district court

committed no significant procedural error, such as failing to calculate (or improperly

calculating) the Guidelines range . . . or failing to adequately explain the chosen

sentence—including an explanation for any deviation from the Guidelines range."

---

[3] To be clear, our review of applications like Hunt's is extremely limited.   *See In re McCall*, ___ F.3d ___, No. 16-12972, slip op. at 5 (Martin, J., concurring) ("Congress did not authorize us to decide the merits of [cases like Hunt's] in the first instance.").   I write solely to explain why I believe *Matchett* was wrongly decided.   I do not opine on the merits of Hunt's claims.

*Id.*   Next, we "consider the substantive reasonableness of the sentence."   *Id.*   In doing so, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range."   *Id.*   Indeed, the Supreme Court has held that appellate courts may "apply a presumption of reasonableness" to a sentence within the Guidelines range, *see Rita v. United States*, 551 U.S. 338, 355, 127 S. Ct. 2456, 2467 (2007), and our court has concluded that a within-Guidelines range sentence is ordinarily reasonable, *see United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009).

A

Considering the "central role" of the Guidelines in this analysis, *see Molina-Martinez*, 136 S. Ct. at 1341, an impossibly vague Guidelines provision guarantees arbitrary enforcement of the law and denial of fair notice to the public as to what constitutes a reasonable sentence.   For example, given that the first step of reasonableness review requires us to determine whether the district court properly calculated the defendant's Guidelines range, arbitrary enforcement is a *fait accompli* when the defendant's range is based on a vague provision.   A defendant's Guidelines range is dictated by which Guidelines provisions apply to the defendant. Hence, if the district court relied on a vague provision in calculating a defendant's range, then we must interpret that provision to decide whether it actually applies to the defendant.   A vague provision, however, provides no "generally applicable test"

6

for determining its reach. *See Johnson*, 135 S. Ct. at 2559. Confronted with such a provision, we will be forced to rely on "guesswork and intuition," *see id.*, and our decisions regarding to which defendants it properly applies will be arbitrary. This means that our enforcement of the "reasonable sentence" requirement will be arbitrary. If two similar defendants simultaneously challenge a district court's application of the provision to them, one defendant's appeals panel could find her sentence unreasonable and vacate her sentence, while—by mere bad luck—the other defendant's panel could affirm his sentence. Thus, despite the Guidelines being advisory, a vague Guidelines provision can give rise to arbitrary enforcement of the law and dictate the treatment of defendants.[4]

B

Likewise, when a Guidelines provision is vague, it denies the public fair notice of the consequences of breaking the law. Because defendants have a clearly established expectation that they will receive reasonable sentences and the Guidelines serve as the foundation of the reasonableness analysis, the Guidelines provide notice as to the scope of an acceptable federal sentence. The public must look to the Guidelines to discern the types of sentence that can reasonably be imposed on them. Therefore, *Matchett*'s rationale for holding that the

---

[4] In fact, the Supreme Court recently concluded that, "[i]n the usual case . . . the systemic function of the selected Guidelines range will affect [a defendant's] sentence." *Molina-Martinez*, 136 S. Ct. at 1346. It follows that a vague provision—by causing appellate and district courts to arbitrarily determine Guidelines ranges—will have a "real and pervasive effect" on defendant outcomes. *See id.*

void-for-vagueness doctrine does not apply to the Guidelines—that defendants cannot "look to the Guidelines for notice"—is unconvincing.   *See* 802 F.3d at 1194 (quoting *United States v. Tichenor*, 683 F.3d 358, 365 (7th Cir. 2012)).

*    *    *

In sum, the Supreme Court has held that a sentencing scheme that either "invites arbitrary enforcement" or denies "fair notice" is unconstitutional.   *See Johnson*, 135 S. Ct. at 2556–57.   As demonstrated here, a fatally vague Guidelines provision does both.   For this reason, vague Guidelines provisions must be treated no differently under the due process clause than vague criminal statutes.   To hold otherwise ignores the reality of sentencing post-*Booker*: the Guidelines are enmeshed in our case law and we heavily depend on them to fulfill our judicial duties.   *See Molina-Martinez*, 136 S. Ct. at 1346 ("[T]he Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar.   The Guidelines inform and instruct the district court's determination of an appropriate sentence.").

II

Turning to the specific impact of *Matchett* on our appellate review process, the "hopeless indeterminacy" of the residual clause in § 4b1.2(a) makes our charge to review the reasonableness of sentences based on that clause all but impossible. *See Johnson*, 135 S. Ct. at 2558.   As discussed above, our first step when reviewing

a sentence is to determine whether the defendant's Guidelines range was properly calculated. Accordingly, when faced with an appeal in which the district court found that the defendant qualified for a particular sentence under the residual clause, we must decide whether that frustratingly opaque clause applies to the defendant. As made clear in *Johnson*, this is a futile inquiry. *See id.* at 2560. In the face of such an unworkable task, appellate review of the defendant's sentence is not only impracticable but also "does not comport with the Constitution's guarantee of due process." *See id.*

For these various reasons, I respectfully disagree with our decision in *Matchett*.

ROSENBAUM, Circuit Judge, concurring, joined by WILSON and JILL PRYOR, Circuit Judges:

Imagine a sentencing guideline that read, "A defendant is a career offender if '[p]uddles do not ask for why not?   It is cheese!   Breath and wind.   It is cheese.'" *Boston Legal*, "Word Salad Days" (2006), http://www.imdb.com/title/tt0770843 /quotes (last visited Apr. 28, 2016).   Now imagine that based on the Guidelines range that that indecipherable language required, a district court sentenced a defendant to twice as much time as it otherwise would have.   How could the sentencing court know that the guideline applied?   How could the reviewing court know that the correct Guidelines calculation included an enhancement under that guideline?   Surely doubling a defendant's sentence based on nonsense would violate due process.   But in *United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015), we allowed defendants to continue to be sentenced to much more severe sentences than they would otherwise receive, based on the residual clause of the career-offender guideline, a guideline that the Supreme Court has found hardly more scrutable than the hypothetical one above.

No doubt criminal defendants do not have a due-process right to a sentence within a particular Sentencing Guidelines range.   But Congress can, and essentially has, required courts to begin the sentencing process by correctly calculating the Guidelines range.   The question here is whether, when the Supreme Court strikes language from a statute because it is unconstitutionally vague language and that

10

same language also appears in a guideline, we are constitutionally able to continue to apply that language in the sentencing process that Congress has mandated. The answer, unlike the challenged part of the career-offender guideline, is clear: we are not.

I concur in Sections I.A. and II of Judge Wilson's well-reasoned concurrence. I agree that the Supreme Court's decision in *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551 (2015), holding the Armed Career Criminal Act's ("ACCA") residual clause unconstitutionally vague renders the exact same language in the Sentencing Guidelines unconstitutional as well. So while we are bound by *Matchett* in deciding Hunt's Guidelines claim, I write separately to explain why I believe that *Matchett* was incorrectly decided.

## I.

In *Matchett*, 802 F.3d 1185, the panel reached the opposite conclusion because it held that the vagueness doctrine does not apply to the Sentencing Guidelines. 802 F.3d at 1193-95. To reach that result, the panel first described the vagueness doctrine as "rest[ing] on [a] lack of notice." *Id.* at 1194 (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 1857 (1988)). Then, the panel construed *Irizarry v. United States*, 553 U.S. 708, 128 S. Ct. 2198 (2008), as precluding due-process challenges to, essentially, anything having to do with sentencing under the Guidelines, based on the Supreme Court's remark that that

11

"[a]ny expectation subject to due process protection . . . that a criminal defendant would receive a sentence within the presumptively applicable Guidelines range did not survive our decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), which invalidated the mandatory features of the Guidelines." *Matchett*, 802 F.3d at 1194 (quoting *Irizarry*, 553 U.S. at 713, 128 S. Ct. at 2202). Finally, the panel quoted the Eighth Circuit's decision in *United States v. Wivell*, 893 F.2d 156, 160 (8th Cir. 1990), for the proposition that "[b]ecause there is no constitutional right to sentencing guidelines . . . the limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague." *Matchett*, 802 F.3d at 1194-95 (quoting *Wivell*, 893 F.2d at 160).

## A.

The problem with the first part of the panel's analysis—that the vagueness doctrine "rest[s] on [a] lack of notice"—is that it is incomplete. The vagueness doctrine also protects against arbitrary enforcement by judges. Indeed, in *Johnson* itself the Supreme Court held that the ACCA equivalent of the 13 words at issue here violated due process because it "both denies fair notice to defendants *and invites arbitrary enforcement by judges*." *Johnson*, 135 S. Ct. at 2557 (emphasis added).

**B.**

As for the second part of the panel's analysis—that *Irizarry* precludes due-process challenges to all forms of sentencing error under the Guidelines—I respectfully disagree.   In *Irizarry*, under the advisory Guidelines, a defendant was sentenced above the correctly calculated Guidelines range.   553 U.S. at 712, 128 S. Ct. at 2201.   He asserted that his due-process rights had been violated because the sentencing court varied upwards from the Guidelines range without providing him with prior notice.   *See id.*   The Supreme Court rejected his argument, explaining that under the advisory Guidelines, "neither the Government nor the defendant may place the same degree of reliance on the type of 'expectancy' [of a given sentence] that gave rise to a special need for notice [when the Guidelines were mandatory and the sentencing court departed from them]."   *Id.* 553 U.S. at 713-14, 128 S. Ct at 2202.

Put simply, *Irizarry* stands for only the proposition that a defendant has no due-process interest in receiving a sentence within the Guidelines range.   But *Irizarry* says nothing about whether a defendant has a due-process right to a correct and fair sentencing *process* under the Sentencing Guidelines.   And while the Supreme Court has not expressly spoken to such a right, the Court's recent decisions strongly indicate that the right exists.

For starters, in *Molina-Martinez v. United States*, 578 U.S. ___, 136 S. Ct.

1338 (2016), the Supreme Court recently explained that a district court that "improperly calculat[es]" a defendant's Guidelines range makes a "significant procedural error," *id.* at 1346 (quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007)) (quotation marks omitted)—so "particularly serious," *id.*, in fact, that the error generally qualifies in its own right as having "affected the defendant's substantial rights." *Id.*[1]

And that is not surprising, given that the Supreme Court has established that a correct and fair sentencing process necessarily begins with the correct calculation of the Guidelines range. *Gall v. United States*, 552 U.S. 38, 50 & n.6, 128 S. Ct. 586, 596 & n.6 (2007). Indeed, the Supreme Court has instructed that under 18 U.S.C. § 3553(a), "district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Id.* at 50 n.6, 128 S. Ct. at 596 n.6 (emphasis added); *see Peugh v. United States*, 569 U.S. __, 133 S. Ct. 2072, 2083 (2013) (same). The correct Guidelines calculation "anchor[s] both the district court's [sentencing] discretion and the appellate review process." *Peugh*, 133 S. Ct. at 2087.

In other words, the Supreme Court has acknowledged that Congress has effectively legislated the requirement that a sentencing court start the sentencing

---

[1] If the Guidelines calculation error in *Molina-Martinez* that resulted in a difference of 7 months' imprisonment on the low end of the Guidelines range constitutes a "significant procedural error," so too must an error in the application of the career-offender Guideline, which can double and sometimes even triple the otherwise-applicable Guidelines range.

14

process by first correctly calculating the Guidelines range. That makes § 3553(a) a "statute[ specifying the procedure for] fixing sentences." *See Johnson*, 135 S. Ct. at 2556-57 (holding that the vagueness doctrine applies to statutes fixing sentences). So to the extent that, as a part of the statutorily mandated sentencing process, § 3553(a) requires courts in calculating the Guidelines range to use a guideline that is "so standardless that it invites arbitrary enforcement," the guideline must be struck down. *See id.* Failure to do so would render the sentencing process that § 3553(a) requires—determining the correct calculation of the Guidelines range—violative of due process because no court could reliably ascertain the correct calculation of the Guidelines range.

That is exactly the problem that the challenged language of the career-offender guideline presents. How can a sentencing court correctly calculate the Guidelines range when it is forced to apply the "hopeless[ly] indetermina[te]" language of the career-offender guideline? *Johnson*, 135 S. Ct. at 2448. Courts had "trouble making sense" of the very same words when they tried to apply them under the ACCA's residual clause. *Id.* at 2559-60. The Supreme Court observed that "[n]ine years' experience trying to derive meaning from the residual clause convince[d it] that [it] ha[d] embarked upon a failed enterprise." *Id.* at 2560. This "'black hole of confusion and uncertainty' that frustrates any effort to impart 'some sense of order and direction,'" *id.* at 2562 (quoting *United States v. Vann*, 660 F.3d

15

771, 787 (4th Cir. 2011) (Agee, J., concurring)), does not somehow magically become clearer or more meaningful because the words appear in the guideline, rather than in the ACCA.

Because of this muddle, a sentencing court cannot ascertain whether the challenged part of the career-offender guideline even applies when the guideline is raised, so the court necessarily cannot correctly calculate the Sentencing Guidelines range.   As a result, the sentencing court cannot comply with the sentencing process's virtual statutory requirement that the sentencing court first correctly calculate the applicable Guidelines range.

And, as Judge Wilson notes, the confusion only grows on appeal. Determining whether a sentence imposed by a district court was procedurally reasonable requires appellate courts to first ascertain whether the district court correctly calculated the applicable Guideline range.   But we are no more skilled in applying "hopeless[ly] indetermina[te]" language than district courts.

### C.

Finally, with regard to the third part of the *Matchett* panel's analysis—that the Sentencing Guidelines cannot be challenged as vague because no constitutional right to sentencing guidelines exists—I again respectfully disagree.   True, "legislatures remain free to decide how much discretion in sentencing should be reposed in the judge or jury in noncapital cases."   *Lockett v. Ohio*, 438 U.S. 586,

16

603, 98 S. Ct. 2954, 2964 (1978). But legislatures cannot, as *Matchett* would apparently hold, cabin the sentencing discretion of judges by mandating that they calculate a defendant's sentence using unconstitutionally vague language.

This would be another case entirely if sentencing judges could choose to wholly disregard the unconstitutionally vague career-offender guideline in calculating sentences. They cannot. Instead, district courts *must* begin the sentencing process by correctly calculating a defendant's Guidelines range. *Peugh*, 133 S. Ct. at 2083. Under *Matchett*, that means that Congress has essentially required district courts to apply unconstitutionally vague language in sentencing defendants. But it could not do that. Due process may not require sentencing guidelines, but it does prohibit Congress from requiring judges to apply unconstitutionally vague language in correctly calculating a defendant's sentence under any guidelines it chooses to enact.

## II.

At bottom, statutorily, courts are required to begin every sentencing by correctly calculating the Guidelines range. Yet the Supreme Court has recognized that courts cannot reliably know whether the challenged language of the career-offender Guideline applies in any given case. As a result, they cannot possibly know whether a correct calculation of the Guidelines range should or should not include such an enhancement. But in *Matchett*, we nonetheless required

17

sentencing courts to impose the enhancement and ourselves to uphold it, anyway.

Trying to divine meaning from the word salad that is the challenged portion of the

career-offender guideline guarantees an arbitrary and unfair sentencing process in

violation of due process.   For this reason, I respectfully disagree with our holding in

*Matchett*.

JILL PRYOR, Circuit Judge, concurring, joined by WILSON and ROSENBAUM, Circuit Judges:

The Supreme Court has told us that it violates the Constitution's guarantee of due process to fix a sentence based on a person's having committed a prior violent felony defined as "involv[ing] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) (containing the so-called "residual clause" of the Armed Career Criminal Act ("ACCA")); *Johnson v. United States*, 135 S. Ct. 2551 (2015) (striking the residual clause as unconstitutionally vague). This definition of "violent felony," the Supreme Court said, is "so shapeless a provision" that any attempt "to derive meaning from" it necessarily will be "a failed enterprise." *Johnson*, 135 S. Ct. at 2560.

Since the Supreme Court decided in *Johnson* that this language is unconstitutionally vague, we have repeatedly misinterpreted and misapplied that decision. We have made the most errors in the context of the Sentencing Guidelines. The Sentencing Guidelines' career offender enhancement, just like the ACCA, applies when a defendant sentenced in federal court has been convicted of three violent felonies. U.S.S.G. §§ 4B1.1, 4B1.2(a)(2) (amended 2016).[1] Just like the ACCA, which lengthens a defendant's maximum sentence of 10 years'

---

[1] The ACCA enhancement applies when a person convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), previously has been convicted of three violent felonies or serious drug offenses. The career offender enhancement applies when a person convicted of a violent felony or drug offense previously has been convicted of two such offenses. Either way, three convictions are required to impose an enhancement.

19

imprisonment to a minimum sentence of 15 years, the career offender enhancement has the effect of significantly increasing a defendant's sentence.   Sometimes, as a result of a defendant's status as a career offender, his sentence more than doubles. Hundreds of applicants have asked this Court for the opportunity to request relief from the district court because they were subject to a much higher sentence due to 13 words the Supreme Court has held to violate an individual's constitutional rights. But we nonetheless must deny these individuals the opportunity to even bring their claims to the district court's attention because this Court has erected barriers to relief despite the Supreme Court's unambiguous holding in *Johnson*.

## II.

In throwing up these sorts of barriers, this Court consistently got it wrong. For starters, shortly after *Johnson* was decided, a panel of this Court limited severely the reach of that ruling by making relief unavailable to any inmate who previously had filed a motion to vacate his sentence under 28 U.S.C. § 2255.   *See In re Rivero*, 797 F.3d 986 (11th Cir. 2015).   The Supreme Court explained over a decade ago that a new substantive rule of constitutional law is retroactively applicable to cases under review in habeas proceedings.   *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (applying *Teague v. Lane*, 489 U.S. 288 (1989)2).   The *Rivero* panel

---

[2] *Teague* set forth a general principle that new rules of law should not be applied retroactively. *See Summerlin*, 542 U.S. at 351-52.   New substantive rules, however, do apply retroactively.   *Id.* at 352.

acknowledged that in *Johnson* the Supreme Court announced a new substantive rule

of constitutional law.   797 F.3d at 989.

But the panel refused to apply *Johnson* retroactively for two separate, newly

formulated reasons.   First, the panel held that *Johnson* could not be retroactively

applicable, even to ACCA cases like *Johnson* itself, because "Congress *could*

impose the punishment in *Johnson* if Congress did so with specific, not vague,

language."   *Id.* at 991.   And second, the *Rivero* panel held that for *Johnson*'s rule

to be retroactively applicable to the career offender enhancement in the sentencing

guidelines, under which Gilberto Rivero had been sentenced, the Supreme Court

must also have held specifically that the guidelines are subject to vagueness

challenges (which it had not).   *Id.*

The *Rivero* panel's holdings contradicted what the Supreme Court had

already told us about retroactivity principles.   And the panel provided no basis in

Supreme Court precedent to justify these two newly minted barriers to relief for

those sentenced based upon language the Supreme Court had just told us was

unconstitutionally vague.   As to the first holding, the Supreme Court previously

implicitly rejected the idea that the prospect of Congressional intervention could

limit the retroactive applicability of a new substantive rule.[3]   As to the second

---

[3] *See Bousley v. United States*, 523 U.S. 614 (1998).   In *Bousley*, the Supreme Court declined to apply the general principle that new rules are not retroactive.   *Id.* at 619-21.   Kenneth Bousley was convicted in 1990 of "using" a firearm in violation of 18 U.S.C. § 924(c)(1).   *Id.* at 616.

21

holding in *Rivero*, nothing in the Supreme Court's body of retroactivity law so much as hinted at a requirement beyond what Justice O'Connor described in *Tyler v. Cain*: "[I]f we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review."   533 U.S. 656, 668-69 (2001) (O'Connor, J., concurring); *see In re Holladay*, 331 F.3d 1169, 1172-73 (11th Cir. 2003) (applying Justice O'Connor's test to hold that the Supreme Court had "made" the rule announced in *Atkins v. Virginia*, 536 U.S. 304 (2002), barring the execution of intellectually disabled persons, retroactively applicable).   Although the *Rivero* panel acknowledged that Justice O'Connor's retroactivity test applied, it failed to employ the test as Justice O'Connor constructed it.

Nonetheless, because of *Rivero*, from August 2015 until April 2016 we

After the Eighth Circuit affirmed his conviction, Mr. Bousley filed for collateral relief.   *Id.* at 617. While his appeal from the district court's denial of habeas relief was pending, the Supreme Court held in *Bailey v. United States* that § 924(c)(1)'s "use" prong required the government to prove "active employment of the firearm."   516 U.S. 137, 144 (1995).   Because Mr. Bousley contended that he merely possessed a firearm during his offense, he argued based on *Bailey* that his conduct failed to qualify under § 924(c).   *Bousley*, 523 U.S. at 617-18.   Amicus, arguing against retroactivity (because the government agreed with Mr. Bousley that he could benefit from *Bailey*'s rule) urged the Supreme Court to apply a *Teague* bar to Mr. Bousley's claim.   The Supreme Court declined, holding that *Bailey* necessarily was available to Mr. Bousley on collateral review because *Bailey* announced a new substantive rule.   *Id.* at 620-21; *see United States v. Peter*, 310 F.3d 709, 711 (11th Cir. 2002) (citing *Bousley* for the proposition that "[d]ecisions of the Supreme Court construing substantive federal criminal statutes must be given retroactive effect").   As I explained in dissent in *Rivero*, Congress was in the process of amending § 924(c)(1) to recriminalize the conduct the Court in *Bailey* held to fall outside the statute's scope.   *Rivero*, 797 F.3d at 999 (Jill Pryor, J., dissenting).   Ultimately, the so-called "Bailey Fix Act" passed, but this had no bearing on the Supreme Court's retroactivity decision in *Bousley*.   *Id.* at 999-1000.

22

denied relief to *every* inmate whose *Johnson*-based request to file a second or successive § 2255 motion we decided. We even continued to deny inmates the opportunity to seek relief after the Supreme Court accepted certiorari in a case in which it would decide the issue of *Johnson*'s retroactivity. *See Welch v. United States*, 136 S. Ct. 790 (2016) (granting petition for certiorari).[4]

In *Welch*, the Supreme Court told us that we were wrong to hold that the rule announced in *Johnson* did not apply retroactively. 136 S. Ct. 1257, 1268 (2016). *Welch* was a case from our Circuit. Mr. Welch had filed a first § 2255 motion before *Johnson* was decided, challenging his ACCA sentence, which was based on the residual clause of that statute. *Id.* at 1263. The district court denied Mr. Welch relief, and he sought a certificate of appealability ("COA") from this Court. *Id.* Even though he notified our Court that *Johnson* was pending in the Supreme Court and requested that his motion be held pending the Supreme Court's decision, his motion for a COA was denied. *Id.* "Less than three weeks later," the Supreme Court observed in overruling us on *Johnson*'s retroactivity, "this Court issued its decision in *Johnson*." *Id.* We had denied Mr. Welch any opportunity for relief knowing that *Johnson* soon would be decided.[5]

---

[4] We apparently were the only Circuit in the nation to have routinely refused to hold in abeyance inmates' applications pending the *Welch* retroactivity decision. *See* Brief of the Federal Public and Community Defenders and the National Association of Federal Defenders as Amici Curiae in Support of Petitioner, at 4 n.3, *Jones v. United States*, No. 15-8629 (U.S. April 21, 2016).

[5] And, of course, had Mr. Welch sought permission from us to file a second § 2255 motion based on *Johnson*, we would have denied him based on *Rivero*.

The Supreme Court in *Welch* flatly rejected this Court's *Rivero* holding that *Johnson*'s rule was not retroactive. It noted that it had already rejected the argument that its decisions might not be retroactively applicable if Congress could "enact a new version of the residual clause that imposes the same punishment on the same persons for the same conduct, provided the new statute is precise enough to satisfy due process." *Id.* at 1267; *see Rivero*, 797 F.3d at 991 (relying upon this reasoning). The "clearest example" the Court pointed out, was its prior decision in *Bousley*, which held a new rule to be retroactive "even though Congress could (*and later did*) reverse [the rule announced in] *Bailey* by amending the statute." *Welch*, 136 S. Ct. at 1267 (emphasis added); *see supra* note 3.

*Welch* was an ACCA case, and it did not speak to the guidelines. But the Supreme Court issued another decision this term that fatally undermines the *Rivero* panel's alternative holding too. *See Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). Remember, the *Rivero* majority acknowledged that the *Johnson* rule was a new substantive rule of constitutional law. 797 F.3d at 989. In *Montgomery*, the Supreme Court stated in no uncertain terms that "courts *must give retroactive effect to new substantive rules of constitutional law.*" 136 S. Ct. at 728 (emphasis added). So although the *Rivero* panel required that for *Johnson*'s rule to apply retroactively to the guidelines there be a third case holding that the guidelines could be void for vagueness, *Montgomery* reminded us that the inquiry is simpler. By the *Rivero*

24

panel's own analysis, the *Johnson* rule was a new substantive rule of constitutional law.   Under *Montgomery*, that means the rule must be given retroactive effect. *Montgomery* ends the analysis there.[6]    In short, we were wrong again.

III.

Even before the Supreme Court could decide *Montgomery* or *Welch*, this Court erected yet another barrier to relief for individuals who were sentenced under the very words the *Johnson* Court struck as unconstitutional.   In *United States v. Matchett*, a panel of this Court held that the rule in *Johnson* did not apply to individuals sentenced under the advisory guidelines because those guidelines are not subject to the Due Process Clause's vagueness doctrine.   802 F.3d 1185, 1193-94 (11th Cir. 2015).   For the reasons articulated in Judge Wilson's and Judge Rosenbaum's concurrences in this case, I believe *Matchett* was wrongly decided. In my view, which I share with my colleagues, *Matchett*'s holding was not grounded in the Constitution, the text of the career offender guideline, or any other solid legal foundation.   Rather, the *Matchett* panel simply decreed that the advisory guidelines, unlike the ACCA, do not "fix punishments" and therefore are not subject to the limitations of due process.   *Id.* at 1195.   But in yet another case this term, the

---

[6] The *Rivero* panel's observation that the guidelines must also be subject to a vagueness challenge in order for Mr. Rivero to obtain relief is not wrong (although I disagree with *Rivero*'s suggestion, later born out in *Matchett*, that the guidelines cannot be unconstitutionally vague).   Rather, the observation was wrongly imported into the retroactivity analysis.   That inquiry belongs instead in an examination of whether any particular inmate has a meritorious *Johnson* claim.   There is no precedential support for the proposition that these two inquiries somehow are related.

Supreme Court underscored that "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016). "The Guidelines inform and instruct the district court's determination of an appropriate sentence. In the usual case, then, the systemic function of the selected Guidelines range will affect the sentence." *Id.*; *see also id.* at 1349 ("[The guidelines] serve as the starting point for the district court's decision and anchor the court's discretion in selecting an appropriate sentence."). By any honest reading, the guidelines fix punishments. As such, in my view, their application must comport with due process.

*Matchett*'s reach in this Circuit is extensive. Now, no person whose advisory sentencing guidelines range was affected by the clause the Supreme Court held to be unconstitutionally standardless in *Johnson* may obtain relief, no matter how long he has been incarcerated or how diligently he has tried to preserve his claims. Bewilderingly, the *Matchett* panel erected this barrier even though the United States—the party responsible for the continued incarceration of career offenders—*agreed* with Mr. Matchett that the residual clause of the career offender guideline was unconstitutionally vague in light of *Johnson*. *See Matchett*, 802 F.3d at 1194.

IV.

This Court's penchant for deciding these fundamentally important issues in

orders on requests for authorization to file—in the absence of any substantive, adversarial briefing—is frustratingly familiar.   We have received over 1,800 requests for authorization to file a second or successive § 2255 motion since *Welch* was decided.[7]    When an inmate makes such a request, we do not receive briefing from the parties.   In nearly all of these cases, we never hear from the government.   And at best, we receive a skeletal description of claims from the movant.   At least as troublingly, the decisions we make are almost completely insulated from review.[8] I believe that in light of the limited time and resources we have to grant or deny authorization and the effective finality of our decision if we deny it, we should avoid making new substantive law in this procedural context.

Unfortunately, not all of my colleagues share my view.   In fact, a panel of this Court recently extended *Matchett*'s holding to cover individuals sentenced when the guidelines were mandatory rather than merely advisory.   *See In re Griffin*, No. 16-12012, __ F.3d __, 2016 WL 3002292 (11th Cir. May 25, 2016).   I have previously expressed my view of why this decision was deeply flawed.   *See In re Sapp*, No. 16-13338, __ F.3d __, 2016 WL 3648334, at *2-7 (Jordan, Rosenbaum, and Jill Pryor, concurring).   This is not the only time since *Johnson* was decided that we have taken a previous decision of our Court and extended it in the successive

---

[7] By my rough calculation, approximately one third of inmates making such requests were seeking relief from their guidelines-based sentences.

[8] *See* 28 U.S.C. § 2244(b)(3)(E) ("The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.").

§ 2255 motion context without any adversarial testing or opportunity for further review. *See In re Williams*, Nos. 16-13013, 16-13232, __ F.3d __, 2016 WL 3460899, *4 (extending the "concurrent sentence doctrine," a rule the Supreme Court long ago said offers nothing more than "a rule of judicial convenience," 9 to the second or successive § 2255 motion context); *In re Hires*, No. 16-12744, __ F.3d __, 2016 WL 3342668, *4 (11th Cir. June 15, 2016) (extending the holding in *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328 (11th Cir. 2013) , that a conviction under Florida's aggravated assault statue qualifies as a violent felony to the post-*Johnson* context without analyzing whether it qualifies notwithstanding *Johnson* and other Supreme Court precedent since *Turner* that would bear on the issue).

Instead of blazing new trails in the second or successive § 2255 motion context, the only issue we should decide is whether, under our existing precedent, the applicant has made a *prima facie* showing that his sentence was based on crimes that met the ACCA's definition of "violent felony" before *Johnson* but no longer do.10

---

9 *Benton v. Maryland*, 395 U.S. 784, 789-91 (1969).

10 *Cf. In re Leonard*, Nos. 16-13528, 16-13804, 16-13857, slip op. at 29-30 & n.11 (11th Cir. July 13, 2016) (Martin, J., concurring) (explaining that the question in the context of a request for authorization to file a successive § 2255 motion "should simply be whether [an inmate's] sentence was based on crimes that met ACCA's 'violent felony' definition before *Johnson* but no longer do," and noting that the answer "should be 'no' only if a sentence clearly was based on 'serious drug offenses' or crimes that we have held are 'violent felonies' after *Johnson*" in light of facts the sentencing court found).

V.

When it comes to *Matchett*, we soon may be told we are wrong again.   On the last day of this year's term, the Supreme Court accepted certiorari in *Beckles v. United States*, No. 15-8544, 2016 WL 1029080 (U.S. June 27, 2016).   *Beckles* is yet another *Johnson* case that originated in this Circuit.   This time, the petitioner was sentenced as a career offender under the advisory guidelines rather than under the ACCA.   So the Supreme Court, in deciding *Beckles*, will decide the very issue that *Matchett* concerns.

If we simply asked whether, on our existing precedent, the applicant has made a *prima facie* showing that his sentence was based on crimes that met the definition of "violent felony" before *Johnson* but no longer do, we undoubtedly would be granting authorization to file second or successive § 2255 motions in more cases. At least then these many individuals who may be serving unconstitutional sentences would have a shot at meaningful review, first in the district court and then in this Court on appeal (and maybe even ultimately in the Supreme Court).

I recognize that the number of requests for authorization we have received in the wake of *Johnson* has been extremely taxing on our Court.   We have been inundated with thousands of filings in addition to our regular court work.   And I understand that published orders from this Court that categorically foreclose relief to whole groups of individuals, like *Matchett* and *Griffin*, may lessen that burden on

29

district courts, too.    But such prudential concerns are not reasons to refuse to remedy constitutional violations.    As judges we are not sworn to shield district courts; rather, we are sworn to uphold the Constitution and vindicate the individual rights that the Constitution protects.

If the Supreme Court decides in *Beckles* that the residual clause in the career offender guideline is void for vagueness, there may be new hope for the scores of inmates who have tried to obtain relief since *Johnson*, only to be turned away by this Court based upon *Matchett*.    I hope next time around we will avoid the mistakes I have identified.    And I hope that, rather than being behind the march of justice, we, as our nation's designated guardians, will be at the front.