In the

# United States Court of Appeals

## For the Seventh Circuit

————————————

No. 14-3611

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TONY A. HURLBURT,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 14-cr-62-jdp — **James D. Peterson**, *Judge.*

————————————

No. 15-1686

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSHUA GILLESPIE,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 14-cr-106-wmc — **William C. Conley**, *Chief Judge.*

———————————

ARGUED DECEMBER 2, 2015 — DECIDED AUGUST 29, 2016

———————————

Before WOOD, *Chief Judge*, and POSNER, FLAUM, EASTERBROOK, KANNE, ROVNER, WILLIAMS, SYKES, and HAMILTON, *Circuit Judges*.

SYKES, *Circuit Judge*. Tony Hurlburt and Joshua Gillespie pleaded guilty in separate cases to unlawfully possessing a firearm as a felon. *See* 18 U.S.C. § 922(g)(1). Their appeals raise the same legal issue, so we've consolidated them for decision. To calculate the Sentencing Guidelines range in each case, the district court began with U.S.S.G. § 2K2.1(a), which assigns progressively higher offense levels if the defendant has one or more prior convictions for a "crime of violence." The term "crime of violence" is defined in the career-offender guideline and includes "any offense … that … is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." *Id.* § 4B1.2(a)(2) (2014) (emphasis added). The highlighted text is known as the "residual clause."

The residual clause in § 4B1.2(a)(2) mirrors the residual clause in the Armed Career Criminal Act ("ACCA"), which steeply increases the minimum and maximum penalties for § 922(g) violations. 18 U.S.C. § 924(e)(2)(B). One year ago the Supreme Court invalidated the ACCA's residual clause as unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). The question here is whether *Johnson*'s holding applies to the parallel residual clause in the career-

offender guideline. An emerging consensus of the circuits holds that it does. *See infra* pp. 16–17.

In this circuit, however, vagueness challenges to the Sentencing Guidelines are categorically foreclosed. Circuit precedent—namely, *United States v. Tichenor* 683 F.3d 358, 364–65 (7th Cir. 2012)—holds that the Guidelines are not susceptible to challenge on vagueness grounds. But *Tichenor* was decided before *Johnson* and *Peugh v. United States*, 133 S. Ct. 2072 (2013), which have fatally undermined its reasoning. Accordingly, we now overrule *Tichenor*. Applying *Johnson*, we join the increasing majority of our sister circuits in holding that the residual clause in § 4B1.2(a)(2) is unconstitutionally vague.

## I. Background

Tony Hurlburt was charged in a two-count indictment with possessing a firearm as a felon, *see* § 922(g)(1), and possessing a short-barreled shotgun, *see* 26 U.S.C. §§ 5841, 5845(a)(2), and 5861(d). He pleaded guilty to the felon-in-possession count; the second count was dismissed.

Under the Sentencing Guidelines, the offense level for the crime of unlawful firearm possession depends in part on the defendant's criminal history. For Hurlburt's crime the base offense level ordinarily is 18. § 2K2.1(a)(5). But if the defendant has a prior conviction for a "crime of violence or a controlled substance offense," the base offense level is 22. § 2K2.1(a)(3). For a defendant with two or more prior convictions of either type, the base offense level jumps to 26. § 2K2.1(a)(1).

Application Note 1 to § 2K2.1 incorporates the "crime of violence" definition in the career-offender guideline, which reads:

> (a) The term "crime of violence" means any of-fense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or ex-tortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

U.S.S.G. § 4B1.2(a) (emphasis added). The highlighted text is known as the "residual clause."

Hurlburt has a prior conviction for armed burglary, and at sentencing he conceded that this conviction qualifies as a predicate crime of violence. The government argued that another of Hurlburt's prior convictions—for discharging a firearm into a building or vehicle, *see* WIS. STAT. § 941.20—should also count as a crime of violence. More particularly, the government argued that this second conviction qualified under § 4B1.2(a)(2)'s residual clause. Over Hurlburt's objec-tion the district judge accepted this argument.

With two predicate convictions for crimes of violence, Hurlburt's base offense level was 26, and the recommended sentencing range was 84–105 months. The judge imposed a below-range sentence of 72 months. Without the second

career-offender predicate, the Guidelines range drops to 57–71 months.

In an unrelated case in the same district, Joshua Gillespie was indicted for unlawfully possessing a firearm as a felon, and he too pleaded guilty. Gillespie has a prior conviction for fleeing an officer. *See id.* § 346.04(3). The district judge counted this conviction as a predicate crime of violence under the residual clause, which increased Gillespie's base offense level to 20. § 2K2.1(a)(4). The resulting Guidelines range was 92–115 months, and the judge imposed a below-range sentence of 84 months. Without the career-offender predicate in the mix, the Guidelines range drops to 51–63 months.

Hurlburt and Gillespie appealed and immediately asked us to suspend briefing to await the Supreme Court's decision in *Johnson*, which raised the question whether the residual clause in the ACCA's definition of "violent felony"—a mirror image of the residual clause in § 4B1.2(a)(2)—is unconstitutionally vague. We held the cases for *Johnson* and reinstated briefing after the Supreme Court issued its opinion. A panel heard argument in both appeals on the same day.[1] The panel prepared an opinion proposing to overrule *Tichenor* and circulated it to the full court in accordance with Circuit Rule 40(e). An en banc vote followed, and a majority of the court approved. This, then, is the opinion of the en

---

[1] Another appeal we decide today, *United States v. Rollins*, No. 13-1731, also raises the same issue and was argued the same day. Because *Rollins* presents an additional issue unique to that case, we have not consolidated it here.

banc court.[2] *See Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009) (using the same procedure).

## II. Discussion

In *Johnson* the Supreme Court held that the ACCA's residual clause is too vague to satisfy minimum requirements of due process. 135 S. Ct. at 2563. Hurlburt and Gillespie argue that *Johnson*'s holding applies to the identically phrased residual clause in § 4B1.2(a)(2), which was used in their cases to increase the base offense level and thus the recommended sentencing range under the Guidelines. The *Johnson* argument is new on appeal, so our review is for plain error. *Henderson v. United States*, 133 S. Ct. 1121, 1124 (2013); FED. R. CRIM. P. 52(b). Under Rule 52(b) we may correct a forfeited error if (1) the error is "plain"; (2) affects the defendant's "substantial rights"; and (3) "seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings." *Henderson*, 133 S. Ct. at 1126–27 (quotation marks omitted).

*Johnson* was not yet decided when the defendants were sentenced, but plain-error review asks whether the error is "plain" at the time of appellate review. *Id.* at 1130. The defendants maintain that the *Johnson* error *is* plain: The two residual clauses are identical, and because the ACCA's residual clause is unconstitutionally vague, it necessarily follows that the residual clause in § 4B1.2(a)(2) is also unconstitutional.

---

[2] District Judge J. Phil Gilbert, of the Southern District of Illinois, served on the original panel, sitting by designation. We appreciate his willingness to assist the court.

The logic is compelling, but our decision in *Tichenor* stands in the way. *Tichenor* held that the Guidelines cannot be challenged on vagueness grounds. 683 F.3d at 364–65. The defendants maintain that *Tichenor* has been fatally undermined by the Supreme Court's decisions in *Johnson* and *Peugh*. The government agrees, so the parties join forces in asking us to overrule *Tichenor*, apply *Johnson*, and invalidate the residual clause in § 4B1.2(a)(2) as unconstitutionally vague.

Of course the parties' agreement doesn't relieve us of our obligation to resolve the question ourselves. *Sibron v. New York*, 392 U.S. 40, 58 (1968). Before proceeding, however, we pause to note two important recent developments. First, the Sentencing Commission has amended the Guidelines to delete § 4B1.2(a)(2)'s residual clause in light of *Johnson*; the amendment became effective August 1, 2016. 81 Fed. Reg. 4741, 4742 (2016). Second, the Supreme Court has granted certiorari in a case on collateral review to address the precise question presented here: whether *Johnson*'s holding applies to the residual clause in § 4B1.2(a)(2). *Beckles v. United States*, 616 F. App'x 415 (11th Cir. 2015), *cert. granted*, 2016 WL 1029080 (U.S. June 27, 2016) (No. 15-8544). *Beckles* will be heard in the Court's upcoming term and raises additional issues unique to its facts and procedural posture. The Court's decision is many months away, so we think it best not to hold these cases for *Beckles*.

### A. *Johnson* and § 4B1.2(a)(2)'s Residual Clause

The Due Process Clause[3] prohibits the government from depriving a person of life, liberty, or property "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 135 S. Ct. at 2556. *Johnson* addressed persistent vagueness concerns about the residual clause in the ACCA's definition of "violent felony." The Act increases the minimum and maximum penalties for various firearm-possession offenses if the defendant has three prior convictions "for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). The Act defines the term "violent felony" as follows:

> [A]ny crime punishable by imprisonment for a term exceeding one year … that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another* … .

§ 924(e)(2)(B) (emphasis added). The highlighted text is the residual clause; the residual clause in the career-offender guideline is a carbon copy.

---

[3] The Fifth Amendment provides: "No person shall … be deprived of life, liberty, or property, without due process of law … ." U.S. CONST. amend. V.

The Court began its analysis in *Johnson* by reaffirming the principle that the Constitution's prohibition of vague laws applies "not only to statutes defining elements of crimes, but also to statutes fixing sentences." 135 S. Ct. at 2557 (citing *United States v. Batchelder*, 442 U.S. 114, 123 (1979)). Before continuing the doctrinal analysis, the Court first explained that the residual clause mandates a two-step categorical approach for classifying crimes as violent felonies. In the first step, the sentencing court must evaluate the predicate crime of conviction, hypothesizing "the kind of conduct that the crime involves in 'the ordinary case,'" rather than looking to the actual facts of the underlying case; in the second step, the court must assess whether this hypothesized "ordinary" case of the crime "presents a serious potential risk of physical injury." *Id.*

These two features of the residual clause, the Court said, "conspire to make it unconstitutionally vague." *Id*. First, the clause "leaves grave uncertainty about how to estimate the risk posed by a crime" because "[i]t ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.*; *see also id*. ("How does one go about deciding what kind of conduct the 'ordinary case' of the crime involves? 'A statistical analysis of the state reporter? A survey? Expert evidence? Google? Gut instinct?'" (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc))). Second, the residual clause "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558.

"By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much

risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* The Court noted as well that the residual clause had persistently resisted judicial efforts—by the Justices themselves and the lower courts—to settle on a stable construction. *Id.* at 2558–63. This interpretive struggle, the Court said, was a "failed enterprise," *id*. at 2560, and "the experience of the federal courts leaves no doubt about the unavoidable uncertainty and arbitrariness of adjudication under the residual clause," *id*. at 2562.

The clause's "hopeless indeterminacy," the Court concluded, "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 2557–58. The Court called a halt to the long-running interpretive battle and held that "imposing an increased sentence under the [ACCA's] residual clause … violates the Constitution's guarantee of due process." *Id.* at 2560, 2563.

As we've explained, § 4B1.2(a)(2)'s definition of "violent felony" contains the same residual clause, and we interpret the two provisions interchangeably, using the same categorical approach that *Johnson* found impermissibly indeterminate. *See, e.g., United States v. Griffin*, 652 F.3d 793, 802 (7th Cir. 2011); *United States v. Spells*, 537 F.3d 743, 749 n.1 (7th Cir. 2008). So unless the Guidelines are immune from challenge on vagueness grounds, it follows inexorably from *Johnson* that the residual clause in § 4B1.2(a)(2) is also unconstitutionally vague. *See United States v. Vivas-Ceja*, 808 F.3d 719, 722–23 (7th Cir. 2015) (applying *Johnson* to the similarly phrased residual clause in the "crime of violence" definition in 18 U.S.C. § 16(b)).

**B.** *Tichenor*

*Tichenor* held that the Guidelines *are* immune from vagueness challenges, but that conclusion is on shaky ground after *Johnson* and *Peugh*. Our decision in *Tichenor* rested on two premises. First, we reasoned that vagueness doctrine doesn't apply to the Guidelines because they do not declare any conduct illegal; they're just "directives to judges for their guidance in sentencing." *Tichenor*, 683 F.3d at 364 (quoting *United States v. Wivell*, 893 F.2d 156, 160 (8th Cir. 1990)). The second premise overlaps the first: We reasoned that vagueness doctrine doesn't apply because *United States v. Booker*, 543 U.S. 220 (2005), demoted the Guidelines from "rules to advice." *Tichenor*, 683 F.3d at 364 (quotation marks omitted). Because the Guidelines are merely advisory, a defendant has no due-process expectation that he will be sentenced within the recommended range, *id.* (citing *Irizarry v. United States*, 553 U.S. 708, 713–14 (2008)), and he "cannot rely on them to communicate the sentence that the district court will impose," *id.* at 365.

*Johnson* conclusively refutes *Tichenor*'s first premise. Citing *Batchelder*, 442 U.S. at 123, the Court confirmed that vagueness doctrine applies to sentencing provisions as well as laws declaring conduct illegal. *Johnson*, 135 S. Ct. at 2557. We touched on *Batchelder* in *Tichenor* but dismissed it as irrelevant, construing its reference to "vague sentencing provisions" as "mere dictum." 683 F.3d at 365. We now know the Supreme Court sees things differently; the Constitution's protection against vague laws is not limited to laws defining criminal liability. As far as vagueness doctrine is concerned, it makes no difference that the Guidelines deal exclusively with sentencing.

*Tichenor*'s second rationale has been fatally undermined by the Court's decision in *Peugh*. There the Court held that the Guidelines, even though advisory, are subject to the limits imposed by the Ex Post Facto Clause. *Peugh*, 133 S. Ct. at 2077–78. A district judge in Northern Illinois had calculated Peugh's sentencing range under the version of the Guidelines in effect at the time of sentencing, as required by 18 U.S.C. § 3553(a)(4)(A)(ii), and this newer version yielded a higher range than the version in effect at the time of the crime. *Id.* at 2078–79. Peugh objected, arguing that applying the harsher version of the Guidelines promulgated after he committed the crime violated his rights under the Ex Post Facto Clause. Based on our circuit precedent, the district judge rejected the argument, and we affirmed. *United States v. Peugh*, 675 F.3d 736, 741 (7th Cir. 2012) (citing *United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006)). The Supreme Court reversed, finding an ex post facto violation.

The Ex Post Facto Clause prohibits, among other things, "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Peugh*, 133 S. Ct. at 2081 (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798) (opinion of Chase, J.)). The "touchstone of [the Ex Post Facto Clause] inquiry is whether a given change in law presents a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 2082 (internal quotation marks omitted).

As the Court explained in *Peugh*, the Ex Post Facto Clause "ensures that individuals have fair warning of applicable laws and guards against vindictive legislative action." *Id.* at 2085. And "[e]ven where these concerns are not directly implicated, … the Clause also safeguards 'a fundamental

fairness interest … in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life.'" *Id*. (quoting *Carmell v. Texas*, 529 U.S. 513, 533 (2000)); *see also Miller v. Florida*, 482 U.S. 423, 429 (1987) (explaining that the Ex Post Facto Clauses "assure that federal and state legislatures [are] restrained from enacting arbitrary or vindictive legislation" and that "legislative enactments give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed") (internal quotation omitted)).

Crucially here, the government argued in *Peugh* that because the post-*Booker* Guidelines are advisory, they "lack sufficient legal effect" to be considered "law" for purposes of the Ex Post Facto Clause. *Peugh*, 133 S. Ct. at 2085; *id.* at 2086 ("The Government … argues … that the Guidelines are too much like guideposts and not enough like fences to give rise to an *ex post facto* violation."). The Court emphatically rejected that argument, explaining that "[t]he post-*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review." *Id.* at 2083. This "anchoring" effect, the Court said, is enough to implicate the concerns underlying the Ex Post Facto Clause; the sentencing court's discretion to sentence outside the Guidelines range "[does] not defeat an *ex post facto* claim." *Id*. at 2081.

The Court explicitly listed the procedural rules and appellate-review standards that give the post-*Booker* Guidelines a degree of "binding legal effect" sufficient to raise ex post facto concerns. *Id*. at 2086. District judges must begin their

sentencing analysis with the Guidelines and correctly calculate the applicable sentencing range. *Id.* at 2083 (citing *Gall v. United States*, 552 U.S. 38, 50 (2007)). Failure to correctly calculate the Guidelines range is procedural error. *Id.* (citing *Gall*, 552 U.S. at 51). Variances above or below the range must be specifically justified, and more justification is needed as the variance increases. *Id*. In short, even though "a district court may ultimately sentence a given defendant outside the … range," the Guidelines retain "force" as the "framework for sentencing." *Id.* "Indeed, the rule that an incorrect Guidelines calculation is procedural error ensures that they remain the starting point for every sentencing calculation … ." *Id.*

And perhaps most importantly, reviewing courts may *presume* that a within-Guidelines sentence is reasonable. *Id*. Our circuit has adopted such a presumption. *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("[A]ny sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness [on appeal].").

With all these formal procedural requirements, the post-*Booker* Guidelines, though ultimately advisory, are not "merely a volume that the district court reads with academic interest in the course of sentencing." *Peugh*, 133 S. Ct. at 2087. To the contrary, the Guidelines have real-world consequences despite their demotion to advisory status. *Peugh* pointed to "considerable empirical evidence" establishing that the Guidelines continue to have "the intended effect of influencing the sentences imposed by judges." *Id*. at 2084. Data from the Sentencing Commission "indicate that when a Guidelines range moves up or down, offenders' sentences

move with it." *Id*. As the Court put it very recently, "[t]hese sources confirm that the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016).

This combination of formal legal requirements and real-world effects led the Court to conclude that the Guidelines, though advisory, are not immune from Ex Post Facto Clause scrutiny. *Peugh*, 133 S. Ct. at 2084. The Court went on to hold that "[a] retrospective increase in the Guidelines range … creates a sufficient risk of a higher sentence to constitute an *ex post facto* violation." *Id*.

It should be clear from this discussion that *Tichenor*'s second premise—that the Guidelines' advisory status insulates them from vagueness challenges—did not survive *Peugh*. The Court held, after all, that the Guidelines are sufficiently law-like to trigger Ex Post Facto protection. If the Guidelines are constraining enough to require compliance with the Ex Post Facto Clause, it follows that they are constraining enough to require compliance with the Due Process Clause's prohibition against vague laws. We see no principled way to distinguish *Peugh* on doctrinal grounds: The two constitutional protections share the same underlying concerns about fair notice and arbitrary governmental action.

To the extent that *Tichenor* relied on *Irizarry*, *Peugh* explicitly considered and rejected the analogy. *Irizarry* held that district judges are not required to give notice before imposing an above-Guidelines sentence based on the sentencing factors in 18 U.S.C. § 3553(a). 553 U.S. at 713. *Peugh* distinguished *Irizarry* this way:

> It is true that we held, in *Irizarry v. United States*, 553 U.S. 708, 713–714 … , that a defendant does not have an "expectation subject to due process protection" that he will be sentenced within the Guidelines range. But … the *Ex Post Facto* Clause does not merely protect reliance interests. It also reflects principles of "fundamental justice." *Carmell*, 529 U.S. at 531, 120 S. Ct. 1620.

*Peugh*, 133 S. Ct. at 2085. The Court's reference to "reliance interests" is shorthand for the fair-notice principle, and its reference to "fundamental justice" captures the Ex Post Facto Clause's concern about arbitrary governmental action. Vagueness doctrine reflects the same concerns. Indeed, in *Johnson* the Court concluded that the ACCA's residual clause both denies fair notice *and* invites arbitrary enforcement. But the fair-notice principle was mostly in the background; the Court's chief concern was that the radical indeterminacy of the residual clause made judicial enforcement essentially ad hoc and arbitrary.

*Irizarry* is also distinguishable for another reason. It addressed a question about *procedural* notice: Must the sentencing court give the defendant notice and an opportunity to respond before imposing an above-Guidelines sentence under § 3553(a)? 553 U.S. at 712–13. Vagueness doctrine and the Ex Post Facto Clause enforce a different notice principle: the *substantive* requirement that the law must give clear notice of the conduct that it prohibits and the consequences that attach to a violation. *See United States v. Pawlak*, 822 F.3d 902, 909 (6th Cir. 2016) (explaining the difference between

"adversarial notice" and "ex ante notice"). For this additional reason, *Irizarry* doesn't inform the analysis here.

Finally, our dissenting colleagues warn that if vagueness doctrine extends to the advisory Guidelines, then other broad and open-ended provisions are vulnerable—for example, the "sophisticated means" enhancement, § 2B1.1(b)(10); the "vulnerable victim" enhancement, § 3A1.1(b); the "abuse of trust" enhancement, § 3B1.3; and even the foundational concept of "relevant conduct," § 1B1.3, which applies to all crimes. *See* Dissent at pp. 27–28. *Johnson* itself specially addressed this kind of objection and rejected it. The Court explained at length that the vagueness defect in the ACCA's residual clause is *not just* its use of indeterminate language; it's that the clause uses indeterminate language *and* must be applied *categorically*, without regard to real-world facts. *Johnson*, 135 S. Ct. at 2557–58. The Court could not have been clearer on this point: It's the *combination* of indeterminate language and categorical application that makes the clause fatally vague. The same is true of the residual clause in the Guidelines. But the categorical feature is unique to the residual clause; other Guidelines provisions are applied to actual facts on the ground. That distinction makes a difference under *Johnson*.

Simply put, after *Peugh* we can no longer say, as we did in *Tichenor*, that because the Guidelines are "advice" rather than "rules," they are immune from challenge on vagueness grounds. Because *Tichenor* has lost its analytical foundation, we now overrule it. Applying *Johnson*, we hold that the residual clause in § 4B1.2(a)(1) is unconstitutionally vague.

With this holding, we join a growing consensus among the circuits. *See id.* at 907 (applying *Johnson* to the residual

clause in § 4B1.2(a)(2) and finding it unconstitutionally vague); *United States v. Madrid*, 805 F.3d 1204, 1211 (10th Cir. 2015) (same); *United States v. Taylor*, 803 F.3d 931, 933 (8th Cir. 2015) (holding that *Johnson* applies to the career-offender guideline but remanding for determination of the vagueness question). Several other circuits have accepted the government's concession without further discussion or assumed without deciding that *Johnson* applies to the career-offender guideline. *See United States v. Soto-Rivera*, 811 F.3d 53, 59 (1st Cir. 2016) (accepting the government's concession that the § 4B1.2(a)(2) residual clause is unconstitutionally vague without deciding the issue); *United States v. Maldonado*, 636 F. App'x 807, 810 & n.1 (2d. Cir. 2016) (assuming without deciding that "the due process concerns that led *Johnson* to invalidate the ACCA's residual clause as void for vagueness are equally applicable to the Sentencing Guidelines"); *United States v. Townsend*, 638 F. App'x 172, 178 & n.14 (3d. Cir. 2015) (invalidating the Guidelines' residual clause after *Johnson* without extended discussion of whether the vagueness doctrine applies). One circuit has declined to apply *Johnson* to the Guidelines. *See United States v. Matchett*, 802 F.3d 1185, 1194–95 (11th Cir. 2015).[4]

## C. Remedy

For both Hurlburt and Gillespie, the *Johnson* error produced a Guidelines range that was too high. That's ordinarily enough to satisfy the prejudice requirement of plain-error

---

[4] As we've noted, the Supreme Court has granted certiorari in a case from the Eleventh Circuit. *Beckles v. United States*, 616 F. App'x 415 (11th Cir. 2015), *cert. granted*, 2016 WL 1029080 (U.S. June 27, 2016) (No. 15-8544). The *Beckles* panel followed *Matchett*, the Eleventh Circuit's precedent on this question.

review. To establish that the error affected their substantial rights, the defendants must show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez*, 136 S. Ct. at 1343, (internal quotation marks omitted). "When a defendant is sentenced under an incorrect Guidelines range[,] … the error itself can, *and most often will*, be sufficient to show a reasonable probability of a different outcome absent the error." *Id*. at 1345 (emphasis added). This is because the Guidelines "inform and instruct the district court's determination of an appropriate sentence. In the usual case, then, the systemic function of the selected Guidelines range will affect the sentence." *Id*. at 1346.

Hurlburt's 72-month sentence fell below the original Guidelines range but is *above* the correctly calculated range once the *Johnson* error is removed. The same is true of Gillespie's 84-month sentence. The defendants request full remand for resentencing.

The government argues for a limited remand akin to the procedure we adopted in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), for *Booker* errors. *Paladino* fashioned a "limited remand to permit the sentencing judge to determine whether he would (if required to resentence) reimpose his original sentence." *Id.* at 484. But we've generally rejected the *Paladino*-style limited-remand procedure when the sentencing error involves a *miscalculation* of the defendant's Guidelines range. *See United States v. Williams*, 742 F.3d 304 (7th Cir. 2014). "When a district court incorrectly calculates the [G]uideline[s] range, we normally presume the improperly calculated [G]uideline[s] range influenced the judge's choice of sentence, unless he says otherwise." *United States v.*

*Adams*, 746 F.3d 734, 743 (7th Cir. 2014). Neither judge said otherwise here.

Accordingly, we VACATE the defendants' sentences and REMAND for resentencing.

HAMILTON, *Circuit Judge*, joined by POSNER, FLAUM, and EASTERBROOK, *Circuit Judges*, dissenting.

By now the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), is familiar to all in the federal criminal justice system. *Johnson* held that the "residual clause" in the Armed Career Criminal Act definition of a violent felony, see 18 U.S.C. § 924(e)(2)(B), is unconstitutionally vague. The en banc majority now holds that the reasoning of *Johnson* extends to a similar residual clause in an *advisory* Sentencing Guideline on career offenders, holding the guideline provision unconstitutionally vague. The majority also overrules *United States v. Tichenor*, 683 F.3d 358 (7th Cir. 2012), which held, correctly in my view, that the advisory Guidelines are not susceptible to vagueness challenges.

The majority's holding is both premature and erroneous. There is no need for us to decide this now. There is already a circuit split, and the Supreme Court is likely to rule on this question in the coming term. See *United States v. Beckles*, 616 Fed. Appx. 415 (11th Cir. 2016), cert. granted, 136 S. Ct. 2510 (2016), which should be argued in the autumn of 2016. We should not hurry to send many cases back to district courts for re-sentencings that may well prove unnecessary. I respectfully dissent.

The best course at this point would be for this court simply to wait for the Supreme Court to decide the issue in *Beckles*. If we must reach the merits now, we should stick with *Tichenor* and agree with the Eleventh Circuit, which decided in *United States v. Matchett*, 802 F.3d 1185, 1193–96 (11th Cir. 2015), that the so-called "residual clause" in the advisory Guideline definition of a crime of violence, see U.S.S.G. § 4B1.2(a)(2), is not unconstitutionally vague because it is only advisory. Judge

Pryor's opinion in *Matchett* is careful and persuasive. Doctrinal and practical considerations support that view. After all, how can non-binding advice be unconstitutionally vague?

To begin with the doctrine, the residual clauses in the Armed Career Criminal Act and the advisory Sentencing Guidelines have identical language, but their legal effects differ in a fundamental way. That difference should lead to different answers on the issue of constitutional vagueness. The vague definition in the statute led directly to higher, often much higher, mandatory minimum and maximum sentences. The most common effect of the Armed Career Criminal Act provision was to require a fifteen-year mandatory minimum sentence for a felon in possession of a firearm when the statutory maximum was otherwise just ten years. See *Johnson*, 135 S. Ct. at 2560 ("Invoking so shapeless a provision to condemn someone to prison for 15 years to life does not comport with the Constitution's guarantee of due process.").

In contrast, the definition in the advisory Sentencing Guidelines leads to no direct consequences of any kind. It simply gives the sentencing judge advice about an appropriate sentence. Unlike in statutory cases, the parties are free to argue that the Guidelines' advice about the defendant's criminal history is either too harsh or too lenient. The judge may accept the Guidelines' advice or reject it. In fact, the law *requires* the judge to treat the advice as only advice. A judge who presumes the Guidelines' advice produces a reasonable sentence commits reversible error. *Gall v. United States*, 552 U.S. 38, 50 (2007); *Rita v. United States*, 551 U.S. 338, 351 (2007).

The doctrinal foundation of the majority opinion is inconsistent with the overall sweep of Supreme Court decisions following *United States v. Booker*, 543 U.S. 220 (2005), which held

the Guidelines advisory as the remedy for the Sixth Amendment problems with mandatory sentencing rules that require judicial fact-finding. Since *Booker*, the Supreme Court has been trying to maintain a delicate balance, recognizing that the difference between "binding law" and "advice" depends on the different standards of appellate review. See *Gall*, 552 U.S. at 50–51.

Since *Booker*, the Court has treated the Guidelines essentially as advice for almost all purposes, but as closer to binding law for just one. For purposes of the Sixth Amendment rights to jury trial, to proof beyond a reasonable doubt, and to grand jury indictment, the Guidelines are now advice. *Booker*, 543 U.S. at 245. For purposes of due process notice, they are advice. *Irizarry v. United States*, 553 U.S. 708, 714 (2008). For purposes of sentencing policy, they are also advice. *Kimbrough v. United States*, 552 U.S. 85, 110–11 (2007) (sentencing court could reject guideline advice on ratio of crack and powder cocaine sentences).

In one sense, though, the Court has treated the Guidelines as more law-like. For purposes of the Ex Post Facto Clause, the Guidelines are closer to the binding law end of the spectrum. *Peugh v. United States*, 569 U.S. —, 133 S. Ct. 2072 (2013). The analysis in *Peugh* was based on the persuasive effect the Guidelines have, including "anchoring" effects on sentencing judges. It is not easy to reconcile *Peugh* with the cases treating the Guidelines as advisory, particularly since constitutional doctrine allows completely *unguided* sentencing discretion, at least apart from capital cases. Perhaps *Peugh* is the first sign of a sea-change in this area of the law, but given the extensive

case law treating the Guidelines as truly advisory, that remains to be seen.[1]

If the Supreme Court extends the rationale of *Peugh*, as the majority does here, and embraces wholeheartedly the concept that the Guidelines are like laws, that result would be difficult to reconcile with the *Booker* remedy, which spared the Guidelines from Sixth Amendment challenges by making them advisory. The delicate doctrinal balance the Court has tried to maintain since *Booker* would be threatened by extending vagueness jurisprudence to the advisory Guidelines.

In *Welch v. United States*, 578 U.S. —, 136 S. Ct. 1257 (2016), the Supreme Court held that *Johnson* is retroactive, applicable on collateral review of federal sentences under 28 U.S.C. § 2255. If *Johnson* is extended to the advisory Guidelines, the argument will be powerful for applying that new holding ret-

---

[1] In extending *Johnson* to the Guidelines, the Sixth Circuit has tried to split hairs even more finely, saying that for one due process notice purpose—"adversarial notice"—the Guidelines are advisory, as in *Irizarry*, while for a supposedly different due process notice purpose—"ex ante notice"—they are closer to binding laws. *United States v. Pawlak*, 822 F.3d 902, 909–10 (6th Cir. 2016). This distinction cannot withstand scrutiny. The hypothesis of "ex ante notice" is that a person deciding whether to commit a crime is entitled to know what punishment the law prescribes. The answer is the statutory sentencing range, regardless of the Guidelines. The hypothetically rational candidate for prosecution should know already there is no guarantee of a guideline sentence. Under *Booker*, *Gall*, *Kimbrough*, and § 3553(a), the sentencing court will be free to impose a non-guideline sentence for many reasons. That is exactly the same knowledge imputed to a defendant and defense counsel on the eve of sentencing. Given that knowledge, the Court held in *Irizarry*, due process does not require further advance notice to the defense about reasons why the sentencing judge may be considering not imposing a guideline sentence.

roactively. If that is the just result, so be it. But we should recognize the likely consequences. Federal courts would need to revisit thousands of previous guideline sentences that relied on the residual clause in the career criminal guidelines.

And what would be the point? The difference between statutory mandates and advisory Guidelines means that the practical consequences of the vagueness holdings differ dramatically. In the Armed Career Criminal Act cases affected by *Johnson*, many cases must result in lower sentences, and in virtually all cases, lighter sentences are reasonably likely on resentencing. But if guideline sentences are remanded on the theory that *Johnson* should apply to the advisory Guidelines, in every case that is remanded the district court will be free to impose exactly the same sentence again. In fact, the district courts probably *should* do so.

To understand why, consider the intellectual gymnastics required by the "categorical" approach to recidivist enhancements. Applying that approach, courts must focus on elements of a prior offense of conviction and must ignore what the defendant actually did. The results are often arbitrary. See, e.g., *Mathis v. United States*, 579 U.S. —, 136 S. Ct. 2243 (2016) (breadth of state burglary statute, which included burglarizing vehicles, meant that defendant's prior convictions for actually burglarizing occupied houses did not count as convictions of "violent felonies"). Yet both before and after *Booker*, the Guidelines have allowed sentencing judges to examine what the defendant *actually did*. See 18 U.S.C. § 3553(a)(1) (requiring consideration of "history and characteristics of the defendant"); § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which

a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); U.S.S.G. § 4A1.3 cmt. (encouraging departures where guideline criminal history is over- or under-representative); cf. *United States v. Sonnenberg*, 628 F.3d 361, 367–68 (7th Cir. 2010) (applying categorical approach to vacate career criminal enhancement but encouraging district judge on remand to consider defendant's actual conduct in case of child sex abuse).

As a result, we should expect little gain in terms of fairness for defendants by telling sentencing judges (a) they cannot use the residual clause in the career offender Guideline, but (b) they remain free to consider available information about the defendant's actual conduct in the earlier crime and to sentence accordingly. In fact, they should be doing so already. The judge's job is first to calculate the guideline range but then to exercise judgment and discretion under § 3553(a) in light of all the available information.

If *Johnson* is extended to the Guidelines, and if a judge were to reduce the sentence because of such a reversal, that decision might be evidence that the judge did not do his/her job at the initial sentencing. No facts would be different, only the advice that the judge was supposed to evaluate critically the first time around. Absent new material facts, a different sentence on remand would tend to show that the judge followed the Guidelines too mechanically, perhaps presuming they were reasonable without assessing the defendant's individual history and characteristics and the particular circumstances of the case.[2]

---

[2] Federal prisoners who were sentenced as career offenders based on the residual clause before *Booker*, while the Guidelines were still considered

In considering the consequences here, the scope of the majority's vagueness holding under the Guidelines will also be difficult to limit. As the Eleventh Circuit noted in *Matchett*, if we extend due process vagueness doctrine to the advisory Guidelines, many guideline sentences will be subject to challenge. 802 F.3d at 1196. I do not see a principled way to avoid extending such a holding beyond the residual clause in the crime of violence definition to other provisions in the Guidelines that are at least as vague if not more so.

Consider, for example, the enhancements for "sophisticated means" in fraud crimes, § 2B1.1(b)(10); the "vulnerable victim" in § 3A1.1(b) (defined as someone who is "unusually vulnerable due to age, physical or mental condition, or who is *otherwise particularly susceptible* to the criminal conduct"—which sounds a lot like a residual clause); aggravating roles in § 3B1.1 (based on "otherwise extensive" criminal activity); or "abuse of trust" under § 3B1.3. Many departure provisions in Part 5K of the Guidelines are quite vague, as is the provision in § 4A1.3 for over- or under-representative criminal history. Even the fundamental concept of "relevant conduct" in § 1B1.3 could easily be challenged as vague if we are worried about whether defendants have fair notice of the consequences of their crimes. Yet this pervasive vagueness in Guideline provisions is not a bug in the system. It is a feature. It is intended to provide sentencing judges with needed flexibility.

binding, might have a much stronger argument for extending *Johnson* to their sentences. These cases do not present that issue, and I express no views on it.

Perhaps one might draw a line between the residual clause and every other provision of the advisory Guidelines, by simply declaring that the result is limited to categorical determinations rather than application of vague standards to specific facts. But it is difficult to see a principled basis for such a limited rule, particularly since § 3553(a) already calls upon judges to take into account the real-world facts of prior convictions. The majority has opened the door to vagueness challenges to any advisory Guidelines. As a matter of broader constitutional doctrine, including the difference between binding and advisory Guidelines that is essential to the Court's Sixth Amendment jurisprudence, it would be more sound to maintain instead the distinction between vague sentencing advice (permitted) and a vague sentencing statute with mandatory consequences (not permitted).

After all, judges can find vague sentencing advice from many sources. Section 3553(a)(2) tells judges in a vague and contradictory way to follow several conflicting theories of punishment at once, so that a sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to crimes, protect the public from further crimes of the defendant, *and* rehabilitate the defendant. Judges can find further vague or indeterminate advice about sentencing in law review articles, philosophical reflections on crime and punishment, advice from probation officers and law clerks, and even from appellate opinions. The fact that some of the advice may be vague should not render the sentence unconstitutional.

I recognize that the Guidelines have a special, elevated status among those other available sources of advice, but they do

remain advisory. And as we and later the Supreme Court consider the vagueness issue here, it is worth remembering that one simple remedy to a regime of somewhat vague advisory Guidelines would be to eliminate some or all of the advice and to leave sentencing judges to their own devices. The permissibility of such discretion has been consistent in all of the Supreme Court's recent sentencing decisions under the Sixth Amendment, from *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000); *id*. at 544–45 (O'Connor, J., dissenting), through *Booker*, 543 U.S. at 233, and *Alleyne v. United States*, 570 U.S. —, —, 133 S. Ct. 2151, 2163 (2013).

Such unguided discretion would be the vaguest regime of all. Defendants would face even greater uncertainty about potential sentences and even greater risk of arbitrary variation in sentences. Yet that is all perfectly constitutional. Why not allow some vagueness in the Guidelines, whose advisory status is essential to avoid Sixth Amendment violations?

Another permissible remedy would be to impose mandatory sentences by statute, denying judges any flexibility. But stripping sentencing judges of discretion leads to other unfortunate results, including delegating sentencing decisions to prosecutors' charging decisions. Better to leave the Guidelines as true guidelines, despite their vagueness and flexibility.